# Kaemmerling's Appeal.

*Taxation—Assessment—Appeals—Hearing de novo—Evidence—Findings of fact—Burden of proof—Prima facie case—Parent and child—Bad faith—Acts of May 15, 1841, P. L. 393, and July 27, 1842, P. L. 445—Market values—Sales.*

1. On an appeal from a tax assessment the hearing in the common pleas is de novo, and the assessment books of the board of revision make out a prima facie case in favor of the county.

2. In such case the burden is on the owner to show that the assessment was excessive.

3. Market value at public sale after due notice is the legal basis recognized by the Acts of May 15, 1841, P. L. 393, and July 27, 1842, P. L. 445, for the assessable value of real estate for purposes of taxation.

4. On the hearing of a tax appeal in the common pleas, evidence of the price paid for the land at a recent bona fide sale after due public notice, is of sufficient weight to overcome the prima facie correctness of the assessment made by the board of revision, if it appears that there was no increase in value from the date of the sale to the date of the assessment.

5. No inference can be drawn that such public sale was colorable, and made solely for the purpose of defeating the assessment, from the mere fact that the purchaser at the sale was the daughter of the owner.

6. No inference of bad faith can be drawn from the bare fact of a sale of property by a parent to his child, but, if bad faith is alleged, it must be proved.

7. Though findings of fact made below are as binding in the appellate court as would be the finding of a jury, where there is evidence to support the conclusions reached, yet if not based on proper proofs, or if they merely give expression to an inference or deduction from that offered, no such effect follows.

Argued November 26, 1924. Appeal, No. 32, Jan. T., 1925, by S. M. Kaemmerling, from order of C. P. Schuylkill Co., Jan. T., 1923, No. 5a, assessing real estate for taxation, in case of S. M. Kaemmerling's Appeal. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ. Reversed.

Appeal from tax assessment as made by the board of revision. Before BERGER, J.

Assessment reduced. S. M. Kaemmerling appealed.

*Error assigned* was, inter alia, decree, quoting it.

*Geo. M. Roads,* with him *P. B. Roads,* for appellant, cited: Phila. & Reading C. & I. Co. v. Northumberland County, 229 Pa. 460; Lally v. R. R., 215 Pa. 436.

*Arthur L. Shay,* with him *Charles A. Snyder,* County Solicitor, *John B McGurl* and *Edmund D. Smith,* for appellees, cited: Thompson's App., 271 Pa. 225.

OPINION BY MR. JUSTICE SADLER, January 5, 1925:

Mrs. Kaemmerling became the owner in 1919 of 10,288 acres of land in Schuylkill County, partly underlaid with coal. It was assessed for tax purposes on the basis of sixty per cent of its supposed market value, and this total determined on was adopted by the board of revision, but later reduced by the court, on appeal, to forty-five per cent of the selling price fixed, the latter being the uniform rate applied and agreed on in valuing coal lands. The appraisement of the same properties, at the previous triennial assessment, when vested in Albert Thompson, had been the subject of litigation, and was a matter of consideration in this court: Thompson's App., 271 Pa. 225.

The present appeals related to tracts of land located in six townships, but all cases were consolidated and heard as one. An offer of the assessment books, as approved by the board of revision, made out the prima facie case required of the county at the hearing de novo, and, in the absence of testimony to the contrary, the valuations thus shown were presumptively just and equitable. The burden was upon the owner to show they were excessive, and this she attempted to do by proving

a public sale of the land for $300,000, which amount, it was insisted, should limit the extent of the assessment.

The testimony offered disclosed that Thompson, father of the appellant, employed a well-known firm of auctioneers in the City of Philadelphia to advertise the property for sale. Twenty-two newspapers in central localities were used for this purpose, the necessary descriptive-matter being inserted at least three times in each. Handbills and pamphlets were also circulated and "mailed out to railroad men, coal men, and coal-mine men." A public vendue was had in Pottsville at the time and place designated. The land was offered first in parcels, containing the acreage located in each of the six townships, and afterwards put up as an entirety. Bids were received from one Conrad and other persons, but the aggregate sum offered for the separate tracts was less than for the whole, and all of the property was stricken down to the former, as attorney for the present appellant, for the sum of $300,000. Articles of agreement were signed, and ten per cent of the purchase price was paid by Conrad, who was later reimbursed by Mrs. Kaemmerling. There was nothing to impeach the good faith of the auctioneer, or counsel for the buyer, and we are not impressed with the suggestion of the court below that the failure to offer a copy of the advertisement and conditions of sale, by which terms might have been disclosed tending to deter bidders, is of importance in deciding upon the honesty of the transaction. The circulars and pamphlets used in advertising were offered, as was the agreement signed by the purchaser, though its admission was refused as immaterial. The other papers were in court in possession of the witness, Knopp, subject to the call of the county, if deemed necessary, and all asked for were placed upon the record.

The buyer was called, and the deed to her introduced in evidence. She detailed the manner in which the purchase price was paid, all but the hand money of $30,000, representing the proceeds derived from the sale of her

interest in certain West Virginia lands acquired many years before, and which had been bought by her father, now deceased. Failure of the witness to describe in other than a general way the property so disposed of is referred to as creating a suspicion of the bona fides of its transfer, but this thought is not entitled to weight, particularly in view of the fact that the giving of this information was prevented by objection of counsel for the county, sustained by the court on the ground that it tended to make necessary a collateral inquiry.

As was properly said in the opinion filed by the court below disposing of the appeal: "No inference of bad faith can be drawn from the bare fact of a sale of property by a parent to his child, but, if bad faith is alleged, it must be proved." We fail to see how this burden was met by those attacking the bona fides of the transaction, and, in the absence of some such testimony, the lack of good faith cannot be assumed. The sale was fairly conducted, after extensive notice had been given to the public, the buyer was the highest and best bidder, and the purchase price was paid. Other evidence showed there was no increase in value of the property from the time it was put up at auction to the date of the assessment complained of.

By the Act of 1841 (May 15, 1841, P. L. 393, section 4), the tax assessors were commanded to fix the worth of properties "according to the actual value thereof, and at such rates and prices for which the same would separately bona fide sell," and the commissioners, as a board of revision, were directed (Act July 27, 1842, P. L. 445, section 13) to inquire whether the assessment was "at a sum or price not less than the same would bring after full public notice at a public sale." "The market value of the separate tracts at public sale, after due notice, is the legal basis recognized by our statutes of determining the assessable value of real estate, and, until the legislature changes this method, it is binding not only upon the taxing authorities, but upon the courts as well": D., L.

& W. R. R. Co. v. Luzerne Co. Comrs., 245 Pa. 515, 518; Lehigh & W.-B. Coal Co. v. Luzerne Co., 225 Pa. 267. "We fully agree that the only standard of valuation recognized by law in making assessments is market value as distinguished from actual value; or, more accurately expressed, actual value limited and defined by market value. This is clearly shown by the Acts of 1841 and 1842, which require the valuation to be fixed upon the basis of selling price at a bona fide sale after due notice": Washington County v. Marquis, 233 Pa. 552, 558. "These statutes have thus declared the rule for the valuation of real estate, and the courts, as well as all other authorities having to do with the enforcement of the law, are bound and limited by it......As applied to the valuation of real estate in a proceeding like the one at bar, if the evidence shows recent bona fide sales of the tracts under consideration, or of tracts similarly situated in the neighborhood and of like quality, the general selling price thus established would be the market value within the meaning of the law, that is, if all the conditions are the same": P. & R. C. & I. Co. v. Northumberland Co. Comrs., 229 Pa. 460, 466. The permission given by the Act of 1842 to the board of revision to correct assessments, so that the price shall be "not less" than the sum obtainable at public sale, does not justify a valuation at an amount greater than could be secured at a fairly conducted vendue.

The prima facie case presented by the production of the assessments made was overcome by evidence of the market value, as shown by the public sale. No testimony was produced to show the transaction was in bad faith, or made for the purpose of manufacturing proof to be wrongfully used on appeal from the appraisement adopted by the board of revision. "In tax cases, like all others, courts must be guided by the evidence in determining what are proper valuations": Kemble's Est., 280 Pa. 441, 447; Penna. Stave Co.'s App., 236 Pa. 97. Where, on appeal, the landowner produces competent

and credible testimony to show the real worth, and that the assessment is too high, and this is not met by additional proof on behalf of the county, which relies on the prima facie case made up by the introduction of the valuation fixed by the taxing authorities, the court should accept the uncontradicted evidence, and revise accordingly: Shannopin Coal Co. v. Greene Co., 280 Pa. 4; Appeal of Penna. Co., Trustee, 282 Pa. 69.

An inference was drawn by the trial judge that the public sale was "colorable," and made solely for the purpose of defeating the assessment. It therefore refused to consider as evidence the price paid for the property by the purchaser, but this deduction is not justified by the record. (Eighth Assignment.) Though findings of fact made below are as binding on this court as would be a verdict of a jury, where there is evidence to support the conclusions reached, yet if not based on proper proofs (McConville v. Ingham, 268 Pa. 507), or if they merely gave expression to an inference or deduction from that offered, no such effect follows: Gongaware's Est., 265 Pa. 512; Miller's Est., 279 Pa. 30. The record here presented does not justify a conclusion that the sale was a pretense, having for its purpose the release of the owner from legal liability for payment of her just proportion of taxes. Without further discussion, assignments numbers 1, 7, 8 and 9 are sustained. In view of the conclusion reached, a consideration of other errors alleged is unnecessary.

The decree is reversed, and the record is remitted with instructions to ascertain the assessable value of the property in question on the basis of market value as established, in accordance with the views expressed in this opinion; costs of the appeal to be paid by the appellee.