**Borg-Warner Corporation, Appellant, *v.* York Tax Review Board.**

Argued June 14, 1965. Before ERVIN, P. J., WRIGHT, WATKINS, MONTGOMERY, FLOOD, JACOBS, and HOFFMAN, JJ.

*Lavere C. Senft,* with him *Cohen, Senft and Rubin,* for appellant.

No argument was made nor brief submitted for appellee.

OPINION BY ERVIN, P. J., September 16, 1965:

These seventeen assessment appeals were consolidated for argument and will be considered in one opinion. In each case the appellant property owner, being dissatisfied with the assessment fixed by the Tax Review Board of the City of York (board), appealed to the Court of Common Pleas of York County, Pennsylvania.

At the hearing before the court below the assessment for each property, by stipulation, was offered in evidence. The appellant property owner then presented

evidence of the fair market value of the property through an expert witness. The witness then testified that he made an analysis of all sales of real estate which occurred in the City of York during the year 1963. His testimony discloses that during 1963 a total of 859 properties were sold, of which he excluded 160 from his analysis because they did not represent true market value sales. He testified that the sales price of the 699 properties totalled $6,579,691 and that the assessed value of these same properties totalled $4,941,500. The overall ratio of assessed value to market value was computed at 75.1%. The witness made a similar analysis according to the wards in which the properties sold were located. The competency and qualifications of this witness were not questioned.

The board offered no testimony or rebuttal evidence other than that of the city assessor, who testified that there are 15,337 assessed properties in the City of York. It was stipulated that the total assessed value of all real estate in the City of York for 1963 was $129,632,850. A certification of the Pennsylvania State Tax Equalization Board that the same real estate had a market value of $150,304,800 for the same year was also admitted into evidence. The ratio of assessed value to market value thereby disclosed was 86.2%.

The court below, after hearings in all of these cases, entered orders fixing the assessments. The owners of the seventeen properties filed separate appeals to this Court.

In its opinion the court below stated: "In all of these cases where the parties did not agree that the assessed value represented the market value, we arrived at what we considered a proper assessment by first giving effect to the rule that the assessment made by the taxing authorities when introduced in evidence is prima facie the correct assessment. See John Wanamaker, Philadelphia, Appeal, 360 Pa. 638. We then

considered whether the prima facie case thus established was overcome by the weight of the evidence in the case, and if it were overcome, we adopted a value which we considered best supported by the weight of the evidence." It must be stated, in fairness to the court below, that it did not have the advantage of having the opinion in *Deitch Co. v. Board of Property Assessment*, 417 Pa. 213, 209 A. 2d 397, which was filed on February 25, 1965. All of the orders in these seventeen cases were filed prior to *Deitch*.

In the majority opinion of Mr. Justice Roberts in *Deitch*, at pages 221, 222, he states: "The proceedings in the trial court are de novo and the proper order of proof in cases such as the present one has long been established. The procedure requires that the taxing authority first present its assessment record into evidence. Such presentation makes out a prima facie case for the validity of the assessment in the sense that it fixes the time when the burden of coming forward with evidence shifts to the taxpayer. If the taxpayer fails to respond with credible, relevant evidence, then the taxing body prevails. But once the taxpayer produces sufficient proof to overcome its initially alloted status, the prima facie significance of the Board's assessment figure has served its procedural purpose, and its value as an evidentiary device is ended. Thereafter, such record, of itself, loses the weight previously accorded to it and may not then influence the court's determination of the assessment's correctness. See Kemble's Estate, 280 Pa. 441, 447, 124 Atl. 694, 696 (1924); Ritter's Appeal, 147 Pa. Superior Ct. 236, 24 A. 2d 470 (1942). Of course, the taxpayer still carries the burden of persuading the court of the merits of his appeal, but that burden is not increased by the presence of the assessment record in evidence.

"Of course, the taxing authority always has the right to rebut the owner's evidence and in such a case

the weight to be given to all the evidence is always for the court to determine. The taxing authority cannot, however, rely solely on its assessment record in the face of countervailing evidence unless it is willing to run the risk of having the owner's proof believed by the court. Where the taxpayer's testimony is relevant, credible and unrebutted, it must be given due weight and cannot be ignored by the court. It must necessarily be accepted. McKnight Shopping Center, Inc. v. Bd. of Property Assessment, 417 Pa. 234, 242, 209 A. 2d 389, 393 (1965); Kaemmerling's Appeal, 282 Pa. 78, 83, 127 Atl. 439, 441 (1925); Kemble's Estate, 280 Pa. 441, 447, 124 A. 2d 694, 696 (1924)."

Chief Justice BELL, in his dissenting opinion in *Deitch*, after quoting the above language of Mr. Justice ROBERTS in the majority opinion, states: "This is both incorrect and confusing. It is clearly and undoubtedly contrary to many reported cases and to hundreds and hundreds of unreported cases, and is utterly unsupportable. All the cases hold that the record of assessment, when introduced into evidence, makes out a *prima facie case* which establishes the validity of the assessment, and the assessment must be affirmed in the absence of any credible evidence which is of such weight as to overcome the prima facie case: . . . ."

We believe that the board and the court below were proceeding on the theory that the prima facie case as made out by the introduction of the assessment into evidence, was still in the case even after the production of evidence by the property owner and that the court did have the right to take it into consideration in fixing the assessment. Under *Deitch* this was clearly error. We could reverse and reduce the assessment in accordance with the evidence in each of these seventeen cases but we feel it would be unfair, under all the circumstances, to do so. The board should have the opportunity to present additional evidence and the court

below should have the opportunity to consider this and all the other evidence in the case. We will vacate the orders of the court below in all seventeen cases and remand the cases so that they may be tried in accordance with *Deitch* and the other authorities therein referred to. Mr. Justice ROBERTS has clearly outlined the procedure to be followed in *Deitch* at page 224, in the following language: "In conclusion, in determining the correctness of the assessment in the present case, the court below must first decide on the basis of the competent, credible, and relevant evidence produced by all parties, what the fair market value of the property involved is. Of course, if the assessment is in excess of that value, it must be reduced. Secondly, the court must determine the appropriate ratio of assessed value to market value which exists in Allegheny County. The court must then apply the ratio thus found to the market value of the property in order to arrive at the proper assessment."

The orders of the court below are vacated and the cases are remanded for further proceedings consistent with this opinion.