Robert C. GREEN and Judith A. Green

v.

**SCHUYLKILL COUNTY BOARD OF ASSESSMENT APPEALS,**
Appellant.

Commonwealth Court of Pennsylvania.

Argued March 10, 1999.
Decided May 7, 1999.

Bert M. Goodman, Wayne, for appellant.

Mary Kay Bernosky, Pottsville, for appellees.

Before COLINS, President Judge, DOYLE, J., SMITH, J., PELLEGRINI, J., FRIEDMAN, J., FLAHERTY, J., and LEADBETTER, J.

LEADBETTER, Judge.

Schuylkill County Board of Assessment Appeals (Board) appeals from the order of the Court of Common Pleas of Schuylkill County (trial court) determining that the real estate owned by Robert and Judith Green (Greens) had a fair market value in 1997 of $360,000.00. At issue is whether the trial court misconstrued this Court's decision in *841 Associates v. Board of Revision of Taxes*, 674 A.2d 1209 (Pa. Cmwlth.1996) in evaluating and accepting the Greens' expert testimony regarding the fair market value of their property, and if not, whether *841 Associates* should be overruled.

Pursuant to a countywide reassessment for 1997, the Greens' home, a 6,344 square foot residence situated on 1.8 acres, was assessed based upon a fair market value of $612,580.00. The Greens appealed the assessment to the Board, which denied the appeal following a hearing. The Greens again appealed and a hearing *de novo* before the trial court followed.

At the subsequent hearing, the Board presented its assessment record into evidence and then rested. In response, the Greens presented the testimony of an expert witness, Anthony Matsell, who opined that the property had a fair market value of $360,000.00. Matsell testified that he relied primarily on the comparable sales method in reaching this conclusion. According to Matsell, the property was over-improved given its geographical location[1] and, therefore, the cost method was not a reliable indicator of the property's fair market value.[2]

In using the comparable sales method, Matsell testified that he had difficulty finding comparable sales for the Green property due to its size and location. He further stated that he did not find any properties that sold at a price over $400,000.00 or $450,000.00. Matsell ultimately chose three comparables, which ranged in size from 3,000 to 3,900 square feet and in price from $252,500.00 to $415,000.00. After computing adjusted sales prices for the comparables, Matsell relied on these to calculate his valuation of $360,000.00.

Based on the evidence presented, the trial court determined that the Green property had a fair market value of $360,000. In doing so, the trial court stated:

> Although we found the testimony of Mr. Matsell to be somewhat suspect, we are unable to conclude that it *completely* lacks credibility. Thus, because the [Greens'] evidence is unrebutted, we are constrained to accept the valuation of the [Greens'] expert. *841 Associates v. Board of Revision,* [674 A.2d 1209 (Pa. Cmwlth.1996)].

*Green v. Schuylkill County Bd. of Assessment Appeals,* No. S–2253–1996 (Schuylkill Cty., filed May 30, 1997) (emphasis sup-

---

1. Matsell noted that the property was located in an area where most homes were, on the average, 3,000 to 3,500 square feet in size and $150,000.00 to $300,000.00 in price.

2. According to Matsell, considering the property's size in relation to its market area, buy-

ers would not be willing to pay the cost of reproducing the home since they would not then be able to recoup that amount in a later sale. Matsell also opined that the income approach was an inappropriate means of valuing the property.

plied). In its subsequent opinion pursuant to Pa. R.A.P.1925, the trial court opined that while it accepted Matsell's testimony that the property was super-improved given its location, it found suspect Matsell's testimony that it was impossible to find a comparable in excess of the fair market value that he had placed upon the property. In this regard, the court noted that Matsell's third comparable, a similar sized property with fewer improvements, had an unadjusted sales value of $415,000.00, and an adjusted sales value of $444,000.00. The court also noted, *inter alia,* that Matsell's reasons for relying more heavily on the first two comparables rather than on the third comparable were not compelling. Despite the aforesaid credibility findings, the trial court, interpreting *841 Associates* to mandate that the valuation of an unrebutted expert who is found to provide some credible testimony must be accepted *in toto,* concluded that it was compelled to accept Matsell's valuation. According to the trial court, if it were free to accept only part of Matsell's testimony, as it could with any other witness, it would find a fair market value somewhat above Matsell's opinion. *See Green v. Schuylkill County Bd. of Assessment Appeals,* No. S–2253–1996 (Schuylkill Cty., filed July 30, 1997) (opinion pursuant to Pa. R.A.P.1925). The instant appeal followed.

On appeal, the Board maintains that the trial court erred as a matter of law in interpreting *841 Associates* to provide that in an assessment case, the unrebutted testimony of the taxpayer's expert must be accepted if such testimony is not completely lacking in credibility. According to the Board, the trial court's reading of *841 Associates* creates an entirely new standard of credibility to be applied to expert witnesses as it precludes the traditional standard, which allows the fact-finder to accept all, part or none of an expert's testimony.

Before reviewing *841 Associates,* we first note the burdens of proof in a tax assessment case. In *Deitch Company v. Board of Property Assessment,* 417 Pa.

213, 209 A.2d 397 (1965), our Supreme Court described the *de novo* proceedings as follows:

[T]he taxing authority first present[s] its assessment record into evidence. Such presentation makes out a prima facie case for the validity of the assessment in the sense that it fixes the time when the burden of coming forward with evidence shifts to the taxpayer. If the taxpayer fails to respond with credible, relevant evidence, then the taxing body prevails. But once the taxpayer produces sufficient proof to overcome its initially allotted status, the prima facie significance of the Board's assessment figure has served its procedural purpose, and its value as an evidentiary devise is ended. . . .

Of course, the taxpayer still carries the burden of persuading the court of the merits of his appeal, but that burden is not increased by the presence of the assessment record in evidence.

Of course, the taxing authority always has the right to rebut the owner's evidence and in such a case the weight to be given to all the evidence is always for the court to determine. The taxing authority cannot, however, rely solely on its assessment record in the face of countervailing evidence unless it is willing to run the risk of having the owner's proof believed by the court. Where the taxpayer's testimony is relevant, credible and unrebutted, it must be given due weight and cannot be ignored by the court. It must necessarily be accepted. *Id.* at 221–22, 209 A.2d at 402 (citations omitted). *See also Westinghouse Electric Corp. v. Board of Property Assessment Appeals,* 539 Pa. 453, 652 A.2d 1306 (1995).

In *841 Associates,* the fair market value of a Philadelphia office building was at issue. During the *de novo* proceedings, the tax authority introduced its assessment record on the property, indicating a fair market value of $43.2 million, and then rested. In response, the taxpayer presented the testimony of an expert witness

who relied primarily on the comparable sales and income approaches to value the property.[3] With respect to the income approach, the expert used two different computations, one based upon the stabilized income approach, and the other, the discounted cash flow analysis. Under the stabilized income approach, the expert, using a projected income stream, calculated a net operating income, capitalized the income at a rate of 10.5 percent to convert the income into a present, lump sum value and then applied a tax factor of 2.78 percent (a total of 13.28 percent). The value reached through this method was $25.5 million. *841 Assocs.*, 674 A.2d at 1212.

Under the discounted cash flow analysis, the expert applied the same capitalization rate and a present worth factor to the net operating income, arriving at a valuation of $25 million. The expert did not apply a tax factor with this method because taxes were deducted as operating expenses. *Id.* On cross-examination, the tax authority asked the expert to apply a capitalization rate of 13.28 percent (which includes the tax factor) to the net operating income arrived at under the discounted cash flow analysis. The expert responded that such a capitalization rate was inappropriate and specifically violated industry standards, but nonetheless performed the requested calculation and stated that it would yield a value of $32.7 million.

The tax authority then attempted to introduce rebuttal evidence; however, the evidence was rejected by the trial court because the rebuttal witness lacked personal knowledge regarding the property. Based upon the aforesaid testimony, the trial court found that the fair market value of the property was $32.5 million. In doing so, the trial court noted that it credited the expert's testimony on cross–examination wherein she applied the 13.28 percent

capitalization rate to the net operating income calculated in the discounted cash flow analysis.

This court reversed on appeal, stating:

> A trial court in tax assessment cases has the option of not finding the taxpayer's expert witness credible and relying on the taxing authority's original assessment. But a trial court does not have the option of determining that the witness was credible and then picking and choosing among the numbers discussed during her testimony to set a new valuation. Here, the trial court found [the expert's] testimony to be competent and relevant and that she was a credible witness; however, it did not accept her expert valuation of the property, instead, erroneously adopting one number from part of one method of determining fair market value.

> *If the expert witness is credible, then the unrebutted evidence of valuation given by the witness must be accepted by the trial court. It is the expert's valuation that the trial court must accept not just a piece of her testimony.* This is particularly true here because the expert was merely doing a mechanical calculation as requested by counsel on cross-examination, and she stated that it would be an improper calculation on which to base an opinion of value.

*Id.* at 1214 (citations and footnote omitted) (emphasis added).

Although it might be argued that the court below painted *841 Associates* with too broad a brush,[4] the plain language of our opinion in that case supports the trial court's approach. Thus, after panel argument, we listed the case for reargument before the court *en banc* to revisit the issue of the trial court's authority regarding expert testimony in tax assessment

**3.** The expert testified that based upon the comparable sales method, the building had a fair market value of $24 million.

**4.** In that case, the trial court's determination was based solely upon a mechanical calcula-

tion performed on cross-examination by an expert who disavowed the legitimacy of the numbers she was asked to use in the exercise, and thus was not supported by substantial evidence.

cases. Followed literally, *841 Associates* imposes upon the trial court the Hobson's Choice that it must either credit or discredit an unrebutted expert's testimony *in its entirety*, and mandates that the trial court must accept an expert's final valuation even where it has found *incredible* one or more component(s) of the testimony necessary to calculate that value. Upon reargument, we have determined that *841 Associates* must be overruled.

*Westinghouse Electric Corporation* bolsters this conclusion. There, one of the arguments raised by the taxpayer on appeal was that the trial court erred in failing to accept the common level ratio established by its expert since his testimony was unrebutted by the taxing authority.[5] After quoting *Deitch Company* for the oft cited proposition that "[w]here the taxpayer's testimony is relevant, credible and unrebutted, it must be given due weight and cannot be ignored.... It must necessarily be accepted (citations omitted)," the Supreme Court stated as follows:

> In the instant case, the testimony of [taxpayer's] expert was received by the trial court as competent, credible and unrebutted evidence. That evidence, thus, must be accepted and given due weight. *However, the weight that is due is for the trial court to determine*. We will not, upon this record, insist that the trial court find the common level ratio for the years in question to be what [taxpayer's] expert said it was. Such a course would be tantamount to this Court's deciding the common level ratio for the relevant years. Accordingly, this question must be remanded to the trial court for resolution.

539 Pa. at 470, 652 A.2d at 1315 (emphasis added). Thus, as *Westinghouse Electric Corporation* demonstrates, the fact-finder is not constrained to accept the ultimate opinion of an expert merely because the witness is unrebutted and has provided *some* credible testimony.[6]

■ Put another way, the testimony of an expert in an assessment appeal is to be evaluated in the same manner as any other expert witness, and unrebutted expert testimony is to be judged in the same manner as that of conflicting experts. Specifically, the fact-finder may accept all, none or part of an expert's testimony, part of one expert's testimony and part of another's. *Appeal of Avco Corp.*, 100 Pa. Cmwlth. 616, 515 A.2d 335, 338 (1986).[7]

---

5. In *Westinghouse Electric Corporation*, the trial court essentially determined a common level ratio by splitting the difference between the ratio established by the taxing authority's assessment record and that testified to by the taxpayer's expert. On appeal, the Supreme Court noted that: (1) prior to trial, the trial court intimated that if the parties could not resolve the issue, it would impose a compromise ratio; and (2) the trial court failed to articulate any basis or reason to support its determination of the common level ratio. 539 Pa. at 468–69, 652 A.2d at 1314. Based on the aforesaid, the Supreme Court concluded that the trial court's determination of the common level ratio was arbitrary and unsupported by the evidence. *Id.* at 469, 652 A.2d at 1314.

6. *Compare Appeal of F.W. Woolworth Co. Tax Assessment Case*, 426 Pa. 583, 235 A.2d 793 (1967). There, the Supreme Court held that where the fact-finder specifically commented on the thorough knowledge of the taxpayer's expert, there was no suggestion in the record that the fact-finder had rejected the expert's testimony, and the expert was unrebutted, the fact-finder erred in failing to accept the expert's opinion regarding fair market value.

7. In *Avco Corporation*, the trial court rejected two of three valuation methods used by the experts and arrived at a fair market value different than that testified to by either expert. On appeal, we concluded that the court had not substituted its own judgment for that of the experts' because its determination was supported by competent testimony and evidence of record. 515 A.2d at 338. When the fact-finder is presented with conflicting experts, both of whom are found to be competent and credible, the fact-finder may determine that the fair market value of the property lies somewhere in between the values reached by the competing experts. *See Westinghouse Electric Corp.* (and cases cited therein); *Appeal of Duquesne Club*, 92 Pa.Cmwlth. 15, 498 A.2d 459 (1985), *alloc. denied*, 514 Pa. 637, 522 A.2d 1106 (1987).

The court's function is not to independently value the property, but to determine a value based upon *competent and credible evidence.* *Appeal of F.W. Woolworth Co.,* 426 Pa. 583, 585, 235 A.2d 793, 795 (1967); *County of Monroe v. Bolus,* 149 Pa. Cmwlth. 458, 613 A.2d 178, 181 (1992). Accordingly, whether drawn from the testimony of one unrebutted expert or that of multiple experts, the only constraint upon the fact-finder's determination of fair market value is that it must be supported by expert testimony found to be credible, and may not be based, even in part, upon the assessment record once *any* expert testimony is credited. *Deitch.*

Based upon the foregoing, we reverse the trial court's determination of fair market value. On remand, the trial court must determine the weight to accord the expert's testimony and, based upon the evidence of record found to be credible, determine the fair market value for the property at issue.

### *O R D E R*

AND NOW, this 7th day of May, 1999, the order of the Court of Common Pleas of Schuylkill County in the above captioned matter is reversed and the case is remanded for proceedings consistent with the foregoing opinion.

Jurisdiction relinquished.

Dissenting opinion by Judge PELLEGRINI in which Judge FLAHERTY joins.

PELLEGRINI, Judge, dissenting.

I respectfully dissent. Even though the property owner was the only party in this tax assessment case who presented expert real estate testimony as to the fair market value, the majority holds that the trial court can pick and choose among the factors used by the expert, reweigh them, and then arrive at its own independent opinion of value. I respectfully dissent because the majority's holding is:

- contrary to numerous Supreme Court holdings that when the taxpayer's real estate expert's testimony is unrebutted, it must be accepted.

- by allowing the factfinder to pick and choose among the facts that are given by the unrebutted testimony of the expert, the Majority has impermissibly transformed the factfinder—in this case, the judge—into an expert because allowing him to weigh various factors in arriving at an overall opinion of value is the function of an expert, not the factfinder.

- All questions of valuation, even when unrefuted, must go to the factfinder.

This case involves whether the trial court could make its own independent valuation of the Greens' property when it did not agree that other sales more comparable to their property could not be found or agree with the real estate expert's opinion that certain sales were more comparable than others, even though the Board offered no testimony whatsoever.[1] Specifi-

---

1. The Greens' 6,344 square-foot home was assessed with a fair market value of $612,580 after a countywide reassessment in 1997. After the assessment record was placed into evidence, the Greens presented the expert testimony of Anthony Matsell, who opined that the property had a fair market value of $360,000. He stated that he relied primarily on the comparable sales method and specifically did not rely on the cost method because it was not a reliable indicator of the property's fair market value as the property was over-improved given its geographical location. He also stated that he did not use the income approach because that was an inappropriate means of valuing the property.

   Regarding the comparable sales method, Matsell testified that he had difficulty in finding comparable sales to the Green property because of its size and location, and did not find any properties that sold at a price over $450,000. He further stated that he ultimately chose three comparable properties that ranged in size from 3,000 to 3,900 square feet and in price from $252,500 to $425,000, and based on those properties, valued the Greens' property at $360,000. The trial court relied on Matsell's unrebutted testimony specifically

cally, while it accepted the taxpayer's expert testimony that the property was overvalued, the trial court went on to state that it found his testimony suspect that he was unable to find a comparable sale in excess of the market value of the subject property, and that the expert's reasons for relying more on two comparables rather than on a third was not compelling. It implied that absent our holding in *841 Associates v. Board of Revision of Taxes*, 674 A.2d 1209 (Pa.Cmwlth.1996), it would arrive at a different opinion of value. Reversing *841 Associates*, the majority would allow the factfinder to make those adjustments. However, upon which evidence would the factfinder rely to determine that there are better comparable sales? Where would the factfinder get this evidence? Where would the factfinder get the expertise to determine that the real estate expert relied more heavily on some comparables than others? [2]

The principle that trial courts do not have the ability to find a different market value than that of the unrefuted expert is well established in Pennsylvania law. In *Appeal of Kaemmerling*, 282 Pa. 78, 83, 127 A. 439, 441 (1925), our Supreme Court stated:

> In tax cases, like all others, courts must be guided by the evidence in determining what are proper valuations.' *Kemble's Estate*, 280 Pa. 441, 447, 124 A. 694, 696; *Penna. Stave Co.'s Appeal*, 236 Pa. 97, 84 A. 761. Where, on appeal, the landowner produces competent and credible testimony to show the real

worth, and that the assessment is too high, and this is not met by additional proof on behalf of the county, which relies on the prima facie case made up by the introduction of the valuation fixed by the taxing authorities, the court should accept the uncontradicted evidence, and revise accordingly. *Shannopin Coal Co. v. Greene County*, 280 Pa. 4, 124 A. 266; *Appeal of Penna. Co., Trustee (Pa.)* 282 Pa. 69, 127 A. 441.

In *Appeal of F.W. Woolworth Company*, 426 Pa. 583, 235 A.2d 793 (1967), our Supreme Court again stated that a trial court could not adjust the opinion given by an unrebutted expert. In that case, the Board introduced the assessment of $1,493,730 and rested. The taxpayers called a real estate broker as an expert witness who testified that the market value of the property was $975,000. While the Board then called several of its employees as witnesses, none of their testimony went to the fair market value of the property. Even though the Board called no witnesses as to value, the trial court determined the assessment to be $1,313,700. Taxpayers appealed contending that absent finding their witness not credible, the value that its witness placed on the property had to be accepted. Our Supreme Court agreed, stating the following:

> [T]he Board proceeded at its peril in not producing any testimony whatsoever to refute this expert opinion. *In such a situation we have clearly held that the taxpayers' evidence must be accepted. Deitch Company v. Board of Property*

---

stating that although it found it somewhat suspect, it did not completely lack credibility, and based on our holding in *841 Associates*, was constrained to accept his valuation of the Greens' property.

2. An expert real estate appraiser testifies as to value based upon an appraisal that "is an unbiased estimate of the nature, quality, value or utility of an interest in, or aspect of, identified real estate. An appraisal is based on selective research into appropriate market areas; assemblage of pertinent data; the application of appropriate analytical techniques; and the knowledge, experience, and profes-

sional judgment necessary to develop an appropriate solution to a problem." American Institute of Real Estate Appraisers, The Appraisal of Real Estate 11 (8[th] Ed.1983). In reaching a specific valuation of a particular piece of property, the real estate appraiser considers numerous factors including, but not limited to real estate markets; the property or building description, style and function; comparable sales; income capitalization; income estimates; direct capitalization; yield capitalization; comparable costs of building and value and accrued depreciation.

*Assessment*, 417 Pa. 213, 209 A.2d 397 (1965); *McKnight Shopping Center, Inc. v. Board of Property Assessment*, 417 Pa. 234, 209 A.2d 389 (1965); *Borg–Warner Corp. v. Tax Review Board*, 206 Pa.Super. 172, 213 A.2d 127 (1965). The court is not an expert appraiser; it can act only upon credible and competent evidence presented to it. Having found such evidence before it, the lower court here, consistent with the principles expressed in the above-cited opinions, could only consider the assessment of the Board to have been rebutted and must determine the fair market value to be $975,000. If the Board disagreed with this value, it was its responsibility to produce rebuttal testimony of similar character. Having not done so, it is in no position to complain. (Emphasis added.)

426 Pa. at 584, 235 A.2d at 794. Even though the trial court found taxpayers' expert knowledgeable, contrary to the majority's view that the Supreme Court reversed because the trial court did not reject the taxpayers' expert, the trial court obviously found significant parts of his testimony not cogent, like the trial court did in this case, because it placed a value of $1,313,700 on the property rather than the $975,000 given by the expert. While the Supreme Court specifically commented on the taxpayers' expert's knowledge, that was not the reason that it ordered that the taxpayers' expert's opinion of value be accepted. The real reason the Supreme Court reversed was solely because the Board did not produce any rebuttal testimony. As such, it did not allow any adjustments to be made to the taxpayers' expert's valuation because of the major flaw the trial court had with taxpayers' expert's method of arriving at his valuation and did not allow the trial court's valuation of $1,313,700 to stand. In effect, it held that where the taxpayer's real estate expert's testimony was unrebutted, the trial court had two options: accept the valuation or find the expert not credible.

That these were the only two options available was expressly stated in *McKnight Shopping Center, Inc. v. Board of Property Assessment*, 417 Pa. 234, 209 A.2d 389 (1965), where the trial court again rejected taxpayer's uncontradicted testimony regarding the value of the shopping center. In holding that value had to be accepted, our Supreme Court stated:

First, as pointed out by appellant, the court's reliance on the size factor in rejecting the testimony regarding the value of the smaller shopping center failed to recognize that many factors, of which size is but one, go into the determination of market value. "In determining market value many factors may be relevant...all the elements considered must be directed to determining the *value of the property in the market, a determination which is not controlled by any single factor* and which is ultimately made on the basis of competent testimony as to what the property is worth in the market at a fair sale..." While we do not view the testimony of appellant's witness *as completely satisfactory in explaining fully the factors applicable here*, this testimony cannot be disregarded unless the lower court in the exercise of **its discretion finds it incredible.** (Emphasis added.)

*Id.* at 240, 209 A.2d at 392.

Without saying so, the majority in this case relies on *Westinghouse Elec. Corp. v. Board of Property Assessment, Appeals and Review of Allegheny County*, 539 Pa. 453, 652 A.2d 1306 (Pa.1995), to hold that those cases are inferentially overruled and that factfinders are allowed to pick and choose among the factors used by an unrebutted expert in arriving at his opinion of market value. *Westinghouse*, however, is not controlling because it does not involve a trial court's ability to arrive at a different opinion of market value where there is unrebutted expert testimony, but only the trial court's ability to choose a market value from the opinions of "dueling" experts by balancing those opinions in arriv-

ing at a market value different from those offered by the experts. As Chief Justice Flaherty stated in the concurring part of his concurring and dissenting opinion in *Westinghouse*, there must be opposing experts for that weighing to take place:

The majority recognizes that the trial court did what judges are often forced to do: it found the experts on both sides to be credible and, in the proper exercise of the fact-finding function, selected values within the extremes represented by the credible evidence. Certainly, there is nothing arbitrary about setting the values near the midpoints of the range, as the trial court did in this case.

652 A.2d at 1316.

The reason that the Supreme Court mandates that unrebutted testimony must be accepted is because without these two opinions of value, there is nothing that the factfinder can use to triangulate its position. This casts the factfinder adrift in search of a value, causing it to become something that our Supreme Court says it cannot be – an expert appraiser. An expert, when giving a valuation, considers and adjusts a number of factors and approaches when arriving at a market value, but under the majority's holding, the cogency of every factor used in any approach and how those approaches are synthesized is within the factfinder's purview to accept or reject and come up with a new opinion of value, including recalculating the value up, down or around the value given by the unrebutted expert when there is no countervailing evidence or opinion of value.

The net effect of the majority's holding is that anytime an expert gives an unrebutted opinion of value as to machinery and equipment and goods and services, the case has to go to the factfinder to pick and choose which elements it deems cogent and it can arrive at a new opinion of value. For example, in an eminent domain case where the property owner is the only party that submits real property evidence, the court must submit the case to the jury to arrive at its own opinion of value, even though there is no countervailing evidence for it to rely upon.

Because our Supreme Court has stated that when only one party presents expert testimony that it must either be totally accepted or totally rejected, I would affirm the trial court.

Judge FLAHERTY joins in this dissenting opinion.