# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In re: Alan J. Kivitz, Vicki Sommer,   :
Gary Raymond and Donna Raymond,   :
t/d/b/a Vidoro Properties,   :
               Appellants   :    No. 1715 C.D. 2017
  :    Argued: October 16, 2018
           v.   :
  :
Board of Assessment Appeals of   :
Blair County   :

BEFORE:    HONORABLE ROBERT SIMPSON, Judge
                HONORABLE MICHAEL H. WOJCIK, Judge
                HONORABLE JAMES GARDNER COLINS, Senior Judge

OPINION NOT REPORTED

**MEMORANDUM OPINION**
**BY JUDGE SIMPSON**                **FILED: November 9, 2018**

In this tax assessment appeal with unusual procedures, Alan J. Kivitz, Vicki Sommer Kivitz, Gary Raymond and Donna Raymond, t/d/b/a Vidoro Properties (collectively, Taxpayers) seek review of an October 2017 order of the Court of Common Pleas of Blair County (trial court) regarding their real estate tax assessment appeal of four parcels located in a highway shopping area in Blair County (County). The trial court determined the assessed market values of the properties. Taxpayers only appeal with respect to the parcel known as the Summit Property, and specifically with respect to the square footage of a building located on it. Asserting the County failed to present sufficient evidence supporting its mid-appeal reassessment of the building, which occurred during the trial court proceeding, Taxpayers seek a remand for a determination of the fair market value of that parcel based on the square footage of the building as calculated by their expert. Upon review, we vacate and remand.

# I. Background

Taxpayers own Vidoro Properties, a business which owns four contiguous parcels of land with mixed commercial use improvements including a large building (Summit Property) housing a health and fitness center. The building, located in a highway shopping area, also includes an office leased to HealthSouth. The other parcels include an indoor pool and two one-acre parking lots. The parcels are located in Allegheny Township (Township) in the Hollidaysburg Area School District (School District).

In 2016, the County's Assessment Office undertook a county-wide reassessment, its first since 1958. For the 2017 tax year, the County assessed the market values of the four parcels as follows: (1) Summit Property (Tax Parcel #2-14.1.22) - $5,377,900; (2) Swimming Pool Property (Tax Parcel #2-14.1.21) - $1,676,200; (3) Summit Parking Area- 1.00 Acre (Tax Parcel #2-14.1.12) - $131,700; and (4) Summit Parking Area- 1.05 Acre (Tax Parcel #2-14.1.15) - $110,600.

Taxpayers appealed to the Board and challenged all four assessments. In October 2016, the Board issued a "no change" disposition on each assessment. Reproduced Record (R.R.) at 7a.

Taxpayers appealed to the trial court. They alleged the County's assessments were improper and invalid because they were based on an erroneous interpretation of fair market value. Taxpayers further alleged the assessments

2

lacked uniformity, were discriminatory and substantially higher than assessments of comparable properties in the taxing district.

In support of their position, Taxpayers obtained an appraisal from John K. Cowan (Taxpayers' Appraiser), a certified general appraiser. He appraised the Summit Property. Taxpayers' Appraiser was the only expert witness appearing in this appeal.

At the April 2017 *de novo* hearing, Taxpayers' Appraiser testified that he valued the Summit Property at $2,500,000. Tr. Ct. Hr'g, Notes of Testimony (N.T.), 4/21/17, at 48; R.R. at 66a. Although Taxpayers used the property for a health and fitness club, Appraiser testified its highest and best use would be something other than a health club. Id. Taxpayers' Appraiser did not believe the cost approach would be appropriate for valuation. N.T. at 48-49; R.R. at 66a-67a.

Taxpayers' Appraiser further testified that the income approach would not make sense because although the property leases space to several businesses, overall the Summit Property loses approximately $20,000 per year. N.T. at 25-26; R.R. at 43a-44a. Logically, an investor would not buy a building that loses $20,000 per year. In short, the Summit Property is not sellable as an income property. N.T. at 26, 49; R.R. at 44a, 67a.

Therefore, Taxpayers' Appraiser relied on the comparable sales approach (value per square foot, determined by comparable sales, multiplied by the useable square feet). See N.T. at 50; R.R. at 68a. Appraiser measured the building

on the Summit Property and determined it to be 57,590 square feet in size, which was significantly less than the square footage the County used in its assessment. N.T. at 51; R.R. at 69a. A major reason for the discrepancy was the condition of the second floor, which was not a full floor; rather, it was a mezzanine. N.T. at 56; R.R. at 74a. Taxpayers' Appraiser did not include the area for the mezzanine "because of the nature of the mezzanine." Id. He explained, "A lot of it – it overlooks these basketball courts and the racquetball courts and I did not plug the mezzanine in as square footage. It's observation deck and hallways." Id. This "low utility" testimony was in conjunction with Appraiser's unrebutted testimony that the highest and best use for the building would be for something other than a health club. See N.T. at 48; R.R. at 66a. Also, this testimony is the sole description of the mezzanine in the record. Whether, and to what extent, the square footage of the mezzanine should be used in calculating fair market value based on the comparative sales approach is important to the resolution of the case.

As to comparative sales, the first comparison involved a fitness center that sold for $67.24 per square foot. N.T. at 51; R.R. at 69a. The second comparison involved an abandoned National Guard armory that sold for $53.13 per square foot. N.T. at 51-52; R.R. at 69a-70a. The third sales comparison involved a former auto dealership that sold for $47.24 per square foot. N.T. at 52; R.R. at 70a.

Making certain adjustments, Taxpayers' Appraiser arrived at a figure of $41 to $45 per square foot. Id. Accordingly, he valued the Summit Property

4

building at $43 per square foot, multiplied by 57,590 square feet, which yielded a total market value of approximately $2,500,000.  N.T. at 52-53; R.R. at 70a-71a.

With respect to the square footage in the building, the County based its initial assessment on a measurement of 88,000 square feet.  At the April 2017 hearing, counsel for the County explained that the assessor could not enter the building for assessment purposes and mistakenly believed the building had a full second floor.  See N.T. at 79-80; R.R. at 97a-98a.  The County indicated it encountered similar "mezzanine issues" on prior occasions and that the County's chief assessor committed to sending someone out to do a re-measurement of the building.  N.T. at 80; R.R. at 97a-98a.

On May 23, 2017, the trial court entered an order noting a hearing scheduled for May 31, 2017.  Tr. Ct. Order, 5/23/17; R.R. at 14a-15a.  The court directed all counsel to submit any legal memoranda prior to the May 31 hearing.  Id.  The order further specified (with emphasis by underline added):

> Any of the parties shall also submit any new measurement of the buildings within the (Summit) complex.  There was a major disparity between each party's measurement and this was reviewed by the County of Blair.  The Court would **DIRECT** that the County of Blair, based on any finding of square footage, also formulate a new assessment based on that finding.

Id.  In a letter to the trial court dated May 25, 2017, counsel for the County stated (with emphasis added):

> As you will recall, at the tax assessment appeal trial for the Summit [P]roperty, there was a discrepancy between the square footage of the building as reported by

5

the Assessment Office and by [Taxpayers' Appraiser]. In response to that discrepancy, the County's chief assessor re-measured the building. The square footage of this structure, as measured by the chief assessor on April 28, 2017, is 63,150SF. However, for the reassessment, the square footage was incorrectly designated as 88,000SF. Consequently, the assessment for this parcel incorrectly included a value for 24,850SF, which is being corrected by the chief assessor. This adjustment results in a change of assessment that reduces the assessed fair market value from $5,377,900 to $3,260,600.

County's Revised Assessment Letter, 5/25/17; R.R. at 229a.

In their May 2017 memorandum of law, Taxpayers asserted they overcame the *prima facie* validity of the assessment because the County re-measured the square footage of the building on the Summit Property and admittedly reduced the parcel's fair market value by more than $2,000,000. See Appellants' Mem., 5/31/17, at 5; R.R. at 192a. Taxpayers further asserted the County failed to present any evidence in support of its new assessment. Id. Consequently, Taxpayers argued their Appraiser's testimony and valuations are the only evidence in the record and do not support the trial court's final determination of the fair market value of the Summit Property. Id.

Thereafter, the trial court apparently rescheduled the May 31 hearing to August 28, 2017. See Certified Record, Item #13 (Scheduling Notice to parties' counsel from Deputy Court Administrator Mary Wilt, dated June 9, 2017). There is no record of a further hearing being held or of a party objecting to admission of the letter from counsel for the County regarding the re-measured reassessment.

Ultimately, in its October 2017 decision, the trial court accepted as credible the County's change in assessment of the Summit Property from $5,377,900 to $3,260,600 based on a correction of square footage from 88,000 square feet to 63,150 square feet. Tr. Ct., Slip Op., 10/19/17, at 16; R.R. at 209a.

Regarding the square footage to be used in determining fair market value, the trial court's explanation was as follows:

> The Court finds that the County's correction concerning the square footage from 88,000 to 63,150 square feet convincing. [Taxpayers'] appraisal did not specify the amount of square footage that was leased on the subject property, and [Taxpayers] continue to maintain the square footage of 57,000 ([N.T. at 50; R.R. at 68a]). The Court finds that the proper square footage to be 63,150 in that the Court believes the measurement done by the County to be the more accurate process.

Id.

In rejecting Taxpayers' Appraiser's sales comparison approach, the trial court found that Taxpayers' Appraiser's comparisons were not convincing because the properties used were not appropriate for comparison. Tr. Ct., Slip Op., at 17; R.R. at 210a. The trial court concluded (with emphasis added): "In turn, this demonstrates that [Taxpayers] have failed to meet their burden in rebutting the presumption that the property assessment in question is valid." Id.

7

For these reasons, the trial court determined the fair market value of the Summit Property to be $3,260,600. Taxpayers appeal.[1]

## II. Discussion

## A. Argument

Taxpayers contend the trial court erred in determining they did not overcome the presumption of validity of the County's assessment where it changed it during trial without presenting any evidence in support of the change. They assert the County assessed the Summit Property at $5,377,900 based on 88,000 square feet of space in the building, but lowered it during the trial to $3,260,600 based on a revised measurement of 63,150 square feet.

Taxpayers argue that the appraisal of fair market value is based on fair market value per-square-foot multiplied by the actual square footage. Therefore, they allege both the fair market value per-square-foot and the actual square footage are at issue in the trial court's *de novo* proceeding. Taxpayers acknowledge it is possible that Appraiser did not convince the trial court that his appraised value per-square-foot was credible and thus Taxpayers failed to meet their rebuttal burden. However, Taxpayers assert, the same argument cannot be made for a determination of the actual square footage. To that end, Taxpayers' Appraiser testified he measured the square footage precisely at 57,590.

---

[1] Our review of tax assessment appeals is limited to determining whether the trial court committed an error of law, abused its discretion or violated constitutional rights. Jackson v. Bd. of Assessment of Cumberland Cty., 950 A.2d 1081 (Pa. Cmwlth. 2008).

8

Taxpayers further assert the taxing authorities did not impeach Appraiser's testimony as to square footage. As such, the only evidence the trial court heard on the dimensional component of the assessment came from Appraiser. However, the trial court found the re-measurement of 63,150 square feet to be the more accurate measurement based solely on the letter from the County regarding its assessor's re-measurement. See Tr. Ct., Slip Op., at 16; R.R. at 209a. Taxpayers assert the taxing authorities presented no evidence from which the trial court could determine how the County calculated the reduction in the Summit Property's assessment. Therefore, Taxpayers contend, the County's re-measured reassessment cannot be sustained based merely on a presumption of validity.

Taxpayers further assert the trial court credited their Appraiser's testimony regarding square footage to the extent it warranted a review of the issue. That review resulted in the County's confirmation of at least a partial mistake which lowered its assessment of the Summit Property by more than two million dollars. Thus, Taxpayers argue the County's confirmation of its mistake must result in the trial court's discarding of any reliability in the assessment. Stated differently, the trial court cannot rely on the presumed validity of the County's re-assessed value because Taxpayers' Appraiser established the County's miscalculation of square footage.

Therefore, Taxpayers argue the County's revised assessment cannot be considered a new assessment entitled to a presumption of validity that they must overcome. If a taxing authority could defeat an evidentiary challenge to its

9

assessment during a trial by merely presenting a new assessment, it could defeat any meritorious taxpayer challenge without presenting any evidence.

Summarizing, Taxpayers assert the parties do not dispute the inaccuracy of the initial assessment of the Summit Property, which was reduced by more than two million dollars. Nevertheless, the trial court found the revised assessment to be valid by presumption absent any evidence supporting it. As a result, Taxpayers maintain the trial court erred in holding that the County's re-measured reassessment, which, by itself, constitutes evidence of the unreliability of the original assessment, was entitled to a presumption of validity that Taxpayers did not overcome.

In response, the County contends it successfully established a *prima facie* case, and Taxpayers failed to meet their burden of rebutting the presumption that the assessment was valid. In particular, the County asserts the trial court rejected Taxpayers' Appraiser's testimony regarding the fair market value of the Summit Property as not credible. The trial court rejected not only Taxpayers' Appraiser's income and sales comparison evidence, but also his square footage calculation for the Summit Property building. In particular, the trial court found Taxpayers' Appraiser's sales comparison comprised of non-comparable properties, riddled with inconsistencies and based on improperly supplied data. As such, the County contends the trial court properly determined that Taxpayers failed to rebut the presumption that the final assessment of the Summit Property at $3,260,600 was valid. See Tr. Ct., Slip Op., at 17; R.R. at 210a.

10

Further, the County argues its re-measurement of the building on the Summit Property, to which the parties agreed, did not, by itself, invalidate its assessment and there is nothing in the record showing any admission as to the invalidity of its original assessment. At the hearing, the County's counsel stated that square footage discrepancies are not uncommon, and the County's Assessment Office will send someone out to re-measure the property and correct it. N.T. at 54; R.R. at 72a. Further, the trial court and parties agreed to keep the record open for a re-measurement of the square footage. N.T. at 54-55; R.R. at 72a-73a. The County's chief assessor re-measured the premises and arrived at a figure of 63,150 square feet upon determining that the building did not have a complete second floor. County's Revised Assessment Letter; R.R. at 229a. The trial court accepted the County's re-measurement, which included the partial second floor or mezzanine, as the more accurate process. Tr. Ct., Slip Op., at 16; R.R. at 209a. To the contrary, Taxpayers' Appraiser did not include this area in his square footage calculation. N.T. at 56; R.R. at 74a.

In short, the County emphasizes that the trial court found its reassessment of the Summit Property more credible and convincing than Taxpayers' Appraiser's unacceptable appraisal of that parcel. Consequently, the County maintains, the trial court did not rebut the validity of its assessment regardless of the re-measurement of the square footage, which the trial court accepted.

Moreover, even assuming the County's re-measurement of the square footage, by itself, rebutted the initial validity of the assessment, the County argues

the trial court could still find the reassessment, reduced by the square footage re-measurement, adequate to determine the fair market value of the Summit Property. See Green v. Schuylkill Cty. Bd. of Assessment Appeals, 730 A.2d 1017 (Pa. Cmwlth. 1999) (trial court may determine weight to be given evidence and accept only part of an expert's testimony). Thus, the County asserts the trial court properly accepted the County's reduced assessment based on the re-measurement of the partial second floor or mezzanine area.

## B. Analysis

This appeal involves a 2016 countywide reassessment. At the hearing, the parties recognized that generally, the chief assessor must testify as to the current certified assessed value in order for the presumption of validity to apply. See N.T. at 5; R.R. at 23a; BET Lehigh Real Estate, LLC, v. Schuylkill Cty. Bd. of Assessment Appeals, 67 A.3d 845 (Pa. Cmwlth. 2013). Here, however, the parties stipulated to the original assessments, which were read into the record. N.T. at 6; R.R. at 24a.

Further, after reviewing the Taxpayers' evidence, the trial court rejected Taxpayers' Appraiser's valuation. Tr. Ct., Slip Op., at 16-17; R.R. at 209a-210a. In particular, the court rejected Appraiser's sales comparison on the ground that the properties were not comparable in either quality or type. Id.

Nonetheless, the trial court permitted the parties to re-measure the square footage of the building on the Summit Property. See N.T. at 54-55; R.R. at 72a-73a. Taxpayers did not object to leaving the record open for the court to

12

receive findings on the re-measurement.  Id.  However, Taxpayers argued that if the parties disagreed to the re-measurement, the trial court must make the decision. N.T. at 55; R.R. at 73a.

The trial court treated the County's re-measurement as a new assessment and determined the proper square footage to be 63,150.  Tr. Ct., Slip Op., at 16; R.R. at 209a.  To that end, the trial court stated in its opinion: "[T]his demonstrates [Taxpayers] have failed to meet their burden in rebutting the presumption that the property assessment in question is valid."  Id. at 17; R.R. at 210a (emphasis added).

In cases where an appeal is pending before a trial court and it has jurisdiction to grant a final order disposing of the matter, subsequent tax assessments are automatically appealed, have a separate status, and continue to exist notwithstanding the dismissal of the original assessment appeal.  525 Lancaster Ave Apts, LP v. Berks County Bd. of Assessment Appeals, 111 A.3d 1231 (Pa. Cmwlth 2015); see Section 8854(a)(5) of the Consolidated County Assessment Law.[2]  "[T]he automatic appeal provision of Section 8854(a)(5) is

---

[2] Section 8854(a)(5) of the Consolidated County Assessment Law, 53 Pa. C.S. §8854(a)(5), provides:

(5)  If a taxpayer or taxing district has filed an appeal from an assessment, so long as the appeal is pending before the board or before a court on appeal from the determination of the board, as provided by statute, the appeal will also be taken as an appeal by the appellant on the subject property for any valuation for any assessment subsequent to the filing of an appeal with the board and prior to the determination of the appeal by the board or the court.  This provision shall be applicable to all pending appeals as well as future appeals.

intended to eliminate duplicative, precautionary tax appeals and not to act as a trap by which taxpayers can be deprived of their opportunity to be heard." 525 Lancaster Ave Apts, 111 A.3d at 1236-37 (quoting Appeal of P-Ville Assocs., 87 A.3d 898, 903 (Pa. Cmwlth 2014)).

Because the trial court ordered re-measurement of the building, the presumption of validity of the original assessment of the property was rebutted. To the extent the original assessment retained a separate status and continued existence, and to the extent that no party offered any evidence to support the original assessment, Taxpayers' appeal should have been sustained as to the original assessment of the Summit Property. Nevertheless, consistent with the automatic appeal provision, the trial court had the ability to address the re-measured reassessment.

Regarding the re-measured reassessment, the trial court was asked to decide how much square footage from the mezzanine level should be used to calculate fair market value of the Summit Property building under the comparative sales approach. The County maintains the re-measured area of 63,150 square feet should be used, but Taxpayers assert that their Appraiser's measurement of 57,590 square feet is the only value supported by the evidence in the record.

In the absence of objection to the procedures by which the re-measured reassessment was added to the trial court record, there is no reason why that value should not be accorded presumed validity. However, it is unclear on what basis the trial court ultimately chose the County's re-measured area.

14

First, the trial court found the County's re-measurement "to be the more accurate process," Tr. Ct., Slip Op. at 16; R.R. at 209a, after apparently comparing the two processes. But, the trial court did not reference certain testimony of Taxpayers' Appraiser regarding the building's highest and best use, and why given that use he purposefully did not include the low utility mezzanine area in his square footage calculations. See N.T. at 56; R.R. at 74a. Also, there is no information in the record about the County's *process* for re-measurement, so comparison of the processes is problematic. Certainly, there is not enough information in the record for this Court to evaluate whether the trial court's determination of *more accurate process* is supported by substantial evidence.

Second, the trial court also stated that Taxpayers failed to meet their burden in rebutting the presumption that the re-measured reassessment was valid. But this presumes the trial court found Taxpayers' Appraiser's prior testimony about the highest and best use and the appropriate square footage not credible or not relevant. See Deitch Co. v. Bd. of Property Assessment, Appeals and Review of Allegheny Cty., 209 A.2d 397, 402 (Pa. 1965) ("If the taxpayer fails to respond with credible, relevant evidence, then the taxing body prevails."). The trial court, however, did not express such determinations about those parts of the Appraiser's testimony. To the contrary, the trial court significantly relied on the square footage testimony of Taxpayers' Appraiser when it required a re-measurement. Under these circumstances, we believe more explanation is needed. In particular, further explanation is needed as to how Taxpayers' Appraiser's highest and best use testimony, and related low utility testimony regarding the mezzanine area, was

addressed by the County's re-measurement, and why that testimony was insufficient to rebut the County's re-measured square footage.

Accordingly, we remand to the trial court to further explain its ruling on this issue. On remand, we leave to the thoughtful consideration of the trial court whether or not to accept additional evidence.

### III. Conclusion

For the above reasons, the order of the trial court is vacated in regards to the original assessment of the Summit Property, and the order of the trial court is also vacated to the extent it determined the re-assessed market value of the Summit Property to be $3,260,600. This matter is remanded for further proceedings consistent with this opinion.

_____
ROBERT SIMPSON, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In re: Alan J. Kivitz, Vicki Sommer,   :
Gary Raymond and Donna Raymond,   :
t/d/b/a Vidoro Properties,   :
               Appellants   :    No. 1715 C.D. 2017
  :
          v.   :
  :
Board of Assessment Appeals of   :
Blair County   :

## **O R D E R**

**AND NOW**, this 9th day of November, 2018, the order of the Court of Common Pleas of Blair County is **VACATED**, and this matter is **REMANDED** for further proceedings consistent with the foregoing opinion. Jurisdiction is relinquished.

 

_____
ROBERT SIMPSON, Judge