**BET LEHIGH REAL ESTATE, LLC, Appellant**

v.

**SCHUYLKILL COUNTY BOARD OF ASSESSMENT APPEALS, Schuylkill County Commissioners, Borough of Tamaqua, and Tamaqua Area School District.**

Commonwealth Court of Pennsylvania.

Argued March 12, 2013.

Decided April 10, 2013.

Dirk S. Berger, Pottsville, and Bert M. Goodman, Wayne, for appellant.

Jeffrey P. Bowe, Tamaqua, for appellee Tamaqua Area School District.

Robert S. Frycklund, Pottsville, for appellees Schuylkill County Board of Assessment Appeals and Schuylkill County Commissioners.

BEFORE: PELLEGRINI, President Judge, and SIMPSON, Judge (P.), and COLINS, Senior Judge.

OPINION BY Judge SIMPSON.

In these consolidated appeals, BET Lehigh Real Estate, LLC (BET) challenges orders of the Court of Common Pleas of Schuylkill County (trial court) that denied its real estate tax assessment appeals for two tax parcels that are underlain by subsurface coal. BET's primary theory before the trial court was that Schuylkill County's (County) failure to abide by its statutory mandates to maintain tax parcel maps and property record cards for these parcels rendered the taxes assessed against those properties void *ab initio*. *See* former Section 306(a)(1)-(3) of the Fourth to Eighth Class County Assessment Law (Assessment Law),[1] formerly 72 P.S. § 5453.306(a)(1)-(3), Section 8834(1)-(3) of the current Consolidated County Assessment Law, 53 Pa.C.S. § 8834(1)-(3),

and Section 405(a) of the County Code,[2] 16 P.S. § 405(a).

After hearing, at which BET presented no expert appraisal testimony regarding the value of the two tax parcels, the trial court determined BET did not sustain its burden of overcoming the County's *prima facie* case as to the assessed values of the parcels. Before this Court, BET raises numerous issues. Upon review, we affirm.

## I. Factual and Procedural Background

In September 2010, BET filed real estate tax assessment appeals for Schuylkill County Tax Parcels 40-0-54733020 and 65-0-54733020. The Schuylkill County Board of Assessment Appeals (Board) held hearings on BET's assessment appeals for those tax parcels. Thereafter, the Board mailed its notices of final determinations and orders of "no change" with respect to BET's assessment appeals for those parcels.

BET appealed the Board's orders for Schuylkill County Tax Parcels 40-0-54733020 and 65-0-54733020 to the trial court.[3]

The trial court held a consolidated hearing on BET's real estate tax assessment appeals for Schuylkill County Tax Parcels

---

1. Act of May 21, 1943, P.L. 571, *as amended,* repealed by the Act of October 27, 2010, P.L. 895. A similar provision is now codified in the Consolidated County Assessment Law, *see* 53 Pa. C.S. § 8834(1)-(3), which became effective January 1, 2011.

   BET filed its assessment appeals in September 2010, shortly before the effective date of the Consolidated County Assessment Law. Therefore, former Section 306(a)(1)-(3) of the Fourth to Eighth Class County Assessment Law applies here.

2. Section 405(a) of the County Code, Act of August 9, 1955, P.L. 323, *as amended.*

3. BET also filed real estate tax assessment appeals for Schuylkill County Tax Parcels 65-22-1, 65-25-4, and 40-1-2. The Schuylkill County Board of Assessment Appeals (Board) held hearings on these assessment appeals, after which it mailed notice of its final determination and order of "no change" as to the assessment appeals for those parcels. BET appealed to the Court of Common Pleas of Schuylkill County (trial court); however, at the outset of the hearing, it withdrew its appeals for Schuylkill County Tax Parcels 65-22-1, 65-25-4, and 40-1-2.

40-0-54733020 and 65-0-54733020. These appeals related to the assessment and imposition of real estate taxes on subsurface minerals and mining rights.

At the hearing, the County presented the testimony of Virginia Murray, its Chief Assessor, as well as the assessment records for tax parcels 40-0-54733020 and 65-0-54733020 for tax years 2011 and 2012.

BET presented the testimony of Christine Skibiel, a title abstractor for Schuylkill Abstract, regarding her search for tax records pertaining to the parcels at issue in BET's assessment appeals.

Tamaqua Area School District (School District) presented the testimony of David Falkenstern of Resource Technologies Corporation (RTC), the entity that handles the County's coal land assessments. The parties also submitted several documentary exhibits.

Significantly, BET presented no independent expert valuation evidence to controvert the assessment valuations presented by the County.

Thereafter, the parties submitted proposed findings of fact and conclusions of law. After submission of these documents, but before the trial court disposed of the appeals, BET filed a praecipe to supplement its proposed findings of fact, conclusions of law and discussion, which sought to direct the trial court's attention to the fact that Portnoff Law Associates, Ltd., acting on behalf of the Panther Valley School District (PVSD), improperly filed a tax claim against the mining permittee, BET Associates IV, rather than BET, the owner of the property. BET asserted the assessment and imposition of real estate taxes against the permittee rather than the owner showed that the taxes at issue represented either (a) the value of personalty obtained through mining operations, namely, the value of coal severed from real property, or (b) the value of an income stream generated through ownership of a mining permit.

Ultimately, the trial court issued two orders denying and dismissing BET's tax assessment appeals as well as an order denying and dismissing BET's request to submit supplemental proposed findings of fact and conclusions of law.

The trial court's denial of BET's assessment appeals did not include findings of fact or conclusions of law. Rather, the trial court's orders stated, in their entirety:

AND NOW, this 9th of July, 2012, after hearing and a careful consideration of the evidence, IT IS HEREBY ORDERED that the Court finds that the Appellant, BET Lehigh Real Estate, LLC, has not sustained its burden of overcoming the County's *prima facie* case as to the assessed values of the property and we, therefore, find that the assessed value of the mineral reserve for Tax Parcel 40-0-54733020 is $1,063550.00 for tax year 2011 and $488,730.00 for tax year 2012....[1]

The Schuylkill County Board of Assessment Appeals is directed to amend its records accordingly.

---

1. At the hearing, BET Lehigh Real Estate, LLC ("BET") failed to introduce any evidence to counter the values reflected in the County's property record cards. Rather, BET argued that the taxes were invalid because (1) the County failed to maintain tax maps pertaining to its parcels at the courthouse, an alleged violation of the requirements of 72 P.S. § 5453.306(a)(1) and 16 P.S. § 405; (2) the County failed to maintain property record cards pertaining to this tax parcel in conformity with the requirements of 72 P.S. § 5453.306(a)(2) and 53 Pa.C.S. § 8834(1) and 16 P.S. § 405; and (3) that mineral reserves are personalty and/or an income stream and not a proper real estate tax assessment. The legal arguments raised by BET do not in any way compromise the validity of the assessments reflected within

County's property record cards. Because BET did not proffer any evidence to overcome the County's *prima facie* case, BET failed to meet its burden and the values for the subject parcels must stand as currently assessed.

\* \* \*

AND NOW, this 9th of July, 2012, after hearing and a careful consideration of the evidence, IT IS HEREBY ORDERED that the Court finds that the Appellant, BET Lehigh Real Estate, LLC, has not sustained its burden[1] of overcoming the County's *prima facie* case as to the assessed values of the property and we, therefore, find that the assessed value of the mineral reserve for Tax Parcel 65–0–54733020 is $2,268,400.00 for tax year 2011 and $1,038,550.00 for tax year 2012.

The Schuylkill County Board of Assessment Appeals is directed to amend its records accordingly.

1. At the hearing, BET Lehigh Real Estate, LLC ("BET") failed to introduce any evidence to counter the values reflected in the County's property record cards. Rather, BET argued that the taxes were invalid because (1) the County failed to maintain tax maps pertaining to its parcels at the courthouse, an alleged violation of the requirements of 72 P.S. § 5453.306(a)(1) and 16 P.S. § 405; (2) the County failed to maintain property record cards pertaining to this tax parcel in conformity with the requirements of 72 P.S. § 5453.306(a)(2) and 53 Pa.C.S. § 8834(1) and 16 P.S. § 405; and (3) that

4. Schuylkill County Local Rule of Civil Procedure 14(VI)(a) specifically states that post-trial motions shall not be filed in real estate tax assessment appeals, and that the decision of the trial court in such cases is a final, appealable order. Also, the trial court's orders here did not invite exceptions or post-trial motions.

5. The Schuylkill County Board of Assessment Appeals and the Schuylkill County Commissioners (collectively, the County) and the Tamaqua Area School District filed briefs as appellees in this matter. The Boroughs of

mineral reserves are personalty and/or an income stream and not a proper real estate tax assessment. The legal arguments raised by BET do not in any way compromise the validity of the assessments reflected within County's property record cards. Because BET did not proffer any evidence to overcome the County's *prima facie* case, BET failed to meet its burden and the values for the subject parcels must stand as currently assessed.

Tr. Ct. Orders, Dkt. Nos. S–3131–2010, S–3132–2010, filed 7/9/12.

BET appealed these orders, as well as the trial court's order denying its request to supplement its proposed findings of fact and conclusions of law, to this Court.[4] The trial court directed BET to file a concise statement of matters complained of on appeal, which it did. In turn, the trial court issued orders pursuant to Pa.R.A.P. 1925(a), which attached its prior orders denying and dismissing BET's tax assessment appeals. This Court subsequently issued an order consolidating BET's appeals, which are now before us for disposition.[5]

## II. Issues

■ On appeal,[6] BET states eight questions involved; however, the argument section of its brief consists of five main issues. Specifically, BET contends the trial court erred in: (1) failing to hold the evidence presented by BET showed the assessments at issue were wholly invalid for

Coaldale and Tamaqua join in the brief submitted by the County. In addition, Panther Valley School District joins in the briefs filed by the County and Tamaqua Area School District.

6. Our review in tax assessment matters is limited to determining whether the trial court abused its discretion, committed an error of law, or reached a determination not supported by substantial evidence. *Herzog v. McKean Cnty. Bd. of Assessment Appeals*, 14 A.3d 193 (Pa.Cmwlth.2011).

failing to comply with former Section 306(a)(1)-(3) of the Assessment Law, Section 8834(1)-(3) of the Consolidated County Assessment Law, and Section 405(a) of the County Code; (2) failing to hold the subject tax is not a tax on real property but instead is an invalid attempt to assess and tax either (a) the value of personalty obtained through mining operations, namely the value of coal severed from real property, or (b) the value of an income stream generated through ownership of a mining permit; (3) failing to make any findings of fact or conclusions of law in connection with its orders denying the assessment appeals; (4) failing to hold the County, in repaying specified taxes to Rausch Creek Land, L.P. (RCL), made a binding admission as to the invalidity of the County's assessment and collection of taxes for mineral reserves; and, (5) denying BET's praecipe to supplement its proposed findings of fact, conclusions of law, and discussion.

### III. Discussion

### A. Statutory Requirements for Assessment Records System

BET first argues that until April 2011, the County failed to maintain mapping records for the tax parcels at issue in conformity with former Section 306(a)(1) of the Assessment Law, and, its successor, Section 8834(1) of the Consolidated County Assessment Law.

Additionally, BET asserts it was not until August 2011 that the County compiled property record card information for the tax parcels at issue, as required by former Section 306(a)(2) of the Assessment Law, and, later, Section 8834(2) of the Consolidated County Assessment Law. BET contends the failure to maintain the required tax maps and property record cards rendered the taxes assessed against tax par-

cels 40–0–54733020 and 65–0–54733020 void *ab initio*. BET asserts these statutory record-keeping requirements, which are taxing statutes, must be construed strictly. *Commonwealth v. Allied Bldg. Credits, Inc.*, 385 Pa. 370, 123 A.2d 686 (1956). It also maintains, "whatever the law requires to be done for the protection of the taxpayer is usually mandatory and cannot be regarded as merely directory." *Id.* at 375, 123 A.2d at 690.

Here, BET contends it showed the subject taxes were invalidly assessed based on the County's failure to maintain required mapping and property record card information. Absent such mapping information, BET argues, it was in no position to know what was being taxed, let alone challenge a valuation arbitrarily assigned to unknown, unidentified tax parcels. BET maintains it was literally impossible for it to present evidence of fair market value because the absence of mapping precluded BET from ascertaining the location and size of the real property that was ostensibly being taxed. Instead, BET asserts, its only recourse was to challenge the assessment itself as wholly invalid, which it did. BET argues the trial court's determination that the taxing entities presented a *prima facie* case here is tantamount to granting these entities a license to levy and assess any tax they wish with unfettered discretion and absolute impunity.

Further, BET argues, during the testimony of Christine Skibiel, a title searcher, and David Falkenstern, a geologist employed by RTC, it emerged that the County and the other taxing entities believed the maintenance of mapping information pertaining to the permit parcels at issue, as well as other coal tracts, by RTC in State College was sufficient. Essentially, BET maintains, the taxing entities have taken the position that the mapping information need not be maintained at a loca-

tion in Pottsville, the County seat. BET contends this argument is misplaced because the records purportedly maintained in State College by RTC did not comply with the requirements of former Section 306(a)(1) of the Assessment Law and Section 8834(1) of the Consolidated County Assessment Law.

BET argues the "no harm, no foul" position taken by the taxing entities is at odds with the record here and is contrary to the strict construction requirement enunciated in *Allied Building Credits*. BET asserts that, at trial, the taxing entities emphasized that the fact that the permit parcel tax maps were not maintained in Pottsville was of no moment because the documents could be easily obtained by simply calling RTC in State College. Reproduced Record (R.R.) at 41a, 46a. This proved to be untrue, however, because when counsel for BET called RTC, the maps furnished in response to that call were deficient.

Specifically, BET contends, Falkenstern of RTC testified he furnished maps to BET's counsel at counsel's request. R.R. at 73a–74a. However, that map, *see* R.R. at 127a, fails to comply in any material respect with the requirements of either former Section 306(a)(1) of the Assessment Law or Section 8834(1) of the Consolidated County Assessment Law. In particular, the map was deficient in that: (1) it does not indicate property or lot lines because it does not identify any owner or property by parcel number; (2) no dimensions or areas are indicated; (3) there is no indication as to whether the parcels are improved; and, (4) it does not show any parcel numbers or lot numbers.

Nevertheless, BET contends, the taxing entities argued the maintenance of maps by RTC in State College with respect to permit parcels during the period following the County-wide reassessment and prior to April 2011 conformed to the requirements

of former Section 306(a)(1) of the Assessment Law and Section 8834(1) of the Consolidated County Assessment Law. Those arguments are misguided, for two reasons. First, the map furnished upon inquiry to RTC failed to contain the required information.

Second, the argument is based on a false premise: that the tax mapping records are not records of the County commissioners or the County. This false premise is used to support the position that the requirements of Section 405 of the County Code do not apply. To the contrary, BET argues Section 405 applies to the permit parcel maps, which are, at their core, assessment maps.

BET contends the County clearly believed the tax maps were required to be maintained within the County. There can be no other explanation for the County's subsequent efforts to make the tax maps available at a location within the Schuylkill County Courthouse (specifically, the mineral assessment data information available in the County Tax Assessment office). R.R. at 36a–38a, 140a–41 a.

To compound that failure of compliance, BET asserts, it was not until August 2011 that the County first adhered to former Section 306(a)(2) of the Assessment Law, which required it to maintain property record cards. At the point the County first adhered to these requirements, former Section 306(a)(2) of the Assessment Law was already abrogated by Section 8834(2) of the Consolidated County Assessment Law, 53 Pa.C.S. § 8834(2), which became effective January 1, 2011.

BET also contends the testimony of the County's Chief Assessor revealed the acreage listed on the property record cards for the two tax parcels at issue here was wildly inaccurate.

For these reasons, BET maintains, even if this Court believes the County sustained its *prima facie* burden, the record shows BET completely rebutted the validity of the assessments at issue.

■ In a *de novo* proceeding in a tax assessment case, the taxing authority bears the initial burden of establishing its *prima facie* case for the validity of the assessment. *Herzog v. McKean Cnty. Bd. of Assessment Appeals*, 14 A.3d 193 (Pa. Cmwlth.2011). This is typically done by presenting the official assessment records and the testimony of an assessment officer. *Id.* The burden then shifts to the taxpayer to respond with credible, relevant evidence to persuade the court of the merits of his position. *Id.* If the taxpayer fails to do so, the taxing authority prevails. *Id.* However, if the taxpayer meets its burden, then the court may no longer presume the taxing authority's assessments are correct. *Id.*

■ "In presenting his case, the taxpayer must first offer proof with respect to the actual or market value of the property." *Deitch Co. v. Bd. of Prop. Assessment, Appeals & Review of Allegheny Cnty.*, 417 Pa. 213, 222, 209 A.2d 397, 402 (1965) (emphasis added).

■ Further, where a taxpayer does not meet its burden of presenting credible, relevant evidence to persuade the trial court of the merits of its position, a taxing authority may prevail before a trial court on an appeal from an assessment simply by presenting its assessment records. *Quad Assocs. v. Blair Cnty. Bd. of Assessment Appeals*, 130 Pa.Cmwlth. 62, 566 A.2d 1274 (1989), *overruled on other grounds by Appeal of Borough of Churchill*, 525 Pa. 80, 575 A.2d 550 (1990).

■ Here, at the hearing before the trial court, the County presented the 2011 and 2012 assessment records for Tax Parcels 40–0–54733020 and 65–0–54733020, together with the testimony of the County's Chief Assessor. R.R. at 4a–6a. The trial court admitted the assessment records without objection. R.R. at 15a. The admission of those records established a *prima facie* case for the validity of the assessments. *Herzog.* The burden then shifted to BET to respond with credible, relevant evidence to persuade the trial court of the merits of its position. *Id.* BET presented no independent valuation evidence. Instead, it argued the County's failure to maintain mapping records and property record cards in conformity with relevant statutes rendered the taxes assessed invalid. The trial court was not persuaded by BET's assertions.

BET argues the County's failure to comply with former Section 306(a)(1)-(3) of the Assessment Law, and its successor 53 Pa. C.S. § 8834(1)-(3) (which became effective January 1, 2011), results in the invalidation of the taxes assessed. Those provisions state (with emphasis added):

**§ 5453.306. Permanent records system**

(a) It shall be the duty of the board not later than January 1, 1958 to establish, through its chief assessor and staff, a permanent records system, and thereafter to keep it current, consisting of—

(1) *Tax maps of the entire county drawn to scale or aerial maps, which maps shall indicate all property and lot lines, set forth dimensions or areas, indicate whether the land is improved, and identify the respective parcels or lots by a system of numbers or symbols and numbers* whereby the ownership of such parcels and lots can be ascertained by reference to the property record cards and property owner's index.

(2) *Property record cards arranged geographically according to the loca-*

tion of property on the tax maps, which cards shall set forth the location and description thereof, the acreage or dimensions, description of improvements, if any, the owner's name, address and date of acquisition, the purchase price, if any, set forth in the deed of acquisition, the assessed valuation, and the identifying number or symbol and number shown on the tax map.

(3) Property owner's index consisting of an alphabetical listing of all property owners, setting forth brief descriptions of each parcel or lot owned and cross-indexed with the property record cards and the tax map.

\* \* \*

## § 8834. Assessment records system

It shall be the duty of the county assessment office to maintain a permanent records system consisting of:

(1) *Tax maps of the entire county drawn to scale or aerial maps, which maps shall indicate all property and lot lines, set forth dimensions or areas and identify the respective parcels or lots by a number system.*

(2) *Property record cards identifying the property location on the tax maps and any uniform parcel identifier which may have been assigned, and acreage or dimensions, description of improvements, if any, the owner's name and mailing address and date of acquisition, the purchase price, if any, set forth in the deed of acquisition and the assessed valuation.*

(3) Property owner's index consisting of an alphabetical listing of all property owners, cross-indexed with the property record cards or electronic or

computerized method of searching for property owners by name.

72 P.S. § 5453.306; 53 Pa.C.S. § 8834.

Here, it was established that the County Assessment Office maintains tax assessment records, including tax maps and property record cards, which contain the vast majority, if not all, of the detailed information required by the above-quoted provisions. Specifically, it was established that the County Assessment Office maintained:

● Property record cards that contain the name of the property owner; the address of the property owner (on the cards for the 2011 tax year); the municipality and/or school district in which the property is located; the acreage; that the land is unimproved (on the cards for the 2012 tax year); the tax parcel number; the DEP permit number; and, the assessed value. *See* R.R. at 136a–39a;

● Tax duplicates of the coal lands, R.R. at 143a–44a;

● A spreadsheet listing coal land in Schuylkill County compiled by RTC annually for the County, which includes the tax parcels at issue, which contains similar information to that found on the property record cards, and which is available to the public, R.R. at 61 a–63a, 142a;

● Tax assessment maps and an aerial photograph depicting the mineral reserve assessments at issue, which were available through a telephone call to RTC, R.R. at 69a–71 a, 146a–49a; and,

● Maps of the mineral reserve assessments available through a computer terminal in the County Tax Assessment Office as of April 2011, R.R. at 23a–24a, 140a, 141a.

■ BET takes issue with the fact that the tax maps for the mineral reserves were not available in Pottsville, Pennsylva-

nia, the Schuylkill County seat, but rather at RTC's offices in State College, until April 2011. However, Section 405 of the County Code, upon which BET relies, did not require the County Assessment Office to maintain these records in the County seat.

More specifically, in a recent opinion, this Court, speaking through Judge Brobson, rejected a similar argument concerning Schuylkill County's maintenance of tax maps for mineral resources at RTC's office in State College rather than at a location in the County. We stated:

Section 405(a) of the County Code provides, in part:

The commissioners, auditors, controller, treasurer, sheriff, recorder of deeds, prothonotary, clerk of courts of quarter sessions and oyer and terminer, clerk of orphans' court, register of wills, recorder of deeds and district attorney shall keep their respective offices, and all public records and papers belonging thereto, at the county seat, and in such buildings as may be erected or appropriated for such purpose. The county commissioners shall have the power to keep and maintain records and to contract with persons, for storage, retrieval, and transmission of county records within or outside the county except that no records shall be stored outside the county seat without the approval of the president judge and the officer in charge of the office to which the records belong. Public records stored outside of the county seat shall be made accessible to the general public at the county seat by means of an electronic telecopying system or facility which will permit the retrieval of the records or exact copies thereof within three business days.

County records used on a regular or frequent basis shall remain in the county seat.

*Nothing in the County Code requires the [Schuylkill County Tax Claim] Bureau or the Schuylkill County Assessment Office to maintain records at the county seat.* Additionally, the statute requires that 'county records used on a regular or frequent basis shall remain at the county seat.' Section 405 of the County Code. *Based on [the Chief County Assessor's testimony], it is evident that the mineral resource information is not used on a regular basis.* In fact, [the Chief County Assessor's] testimony indicates that the information contained on the maps held in State College, Pennsylvania, are used approximately once per year. In addition, the general public has access to these records, and the clerks in the Schuylkill County Assessment Office assist members of the public in obtaining the information necessary to locate the mineral mapping resources. . . .

*In re Rausch Creek Land, L.P.,* 59 A.3d 1, 9 (Pa.Cmwlth.2012). Thus, we recently held the County Code does not require the Schuylkill County Assessment Office to maintain the mineral resource information at the County seat. *Id.* Similarly, Section 405(a) of the County Code makes no reference to the County Board of Assessment Appeals or the Chief Assessor, who oversees the County Assessment Office.

Further, as in *Rausch Creek Land,* here the same Chief Assessor testified the County receives information regarding mineral assessments from RTC once per year, and the general public has access to this information. R.R. at 11a–12a, 62a. Also, Falkenstern specifically testified he would provide RTC's mapping information for the mineral assessments at issue here to the public upon request. R.R. at 70a–

71a. We reject BET's arguments to the contrary.

BET also emphasizes that the County's lack of compliance before April 2011 rendered it unable to ascertain what mineral reserves were subject to the assessments, and, therefore, unable to present valuation evidence.[7] This argument fails for several reasons.

First, during Falkenstern's testimony, the School District presented a four-page exhibit, created by Falkenstern, which consisted of three maps and an aerial photograph depicting the parcels at issue. R.R. at 69a–70a, 146a–49a. Falkenstern explained these documents depict: the township boundaries, with an indication of the location of the parcels owned by BET; a map of the land covered by the mining permit for the parcels; and, an aerial photograph that shows the properties at issue with an outline around the area of land encompassed by the mining permit. R.R. at 69a, 70a. A review of the maps and aerial photograph admitted at the hearing without objection confirms this testimony. R.R. at 78a, 146a–49a.

Although BET points to a less detailed map transmitted to BET's counsel by Falkenstern in September 2010, *see* R.R. at 127a, that map was an attachment to a memorandum that contained detailed information regarding the tax parcels at issue. *See* R.R. at 125a–27a. Specifically, the memorandum includes three tables that provide a breakdown of the acreage of the tax parcels at issue as well as detailed valuation data. R.R. at 126a. This memorandum, coupled with Falkenstern's testimony that the four-page exhibit consisting of tax maps and an aerial photograph of the parcels was available upon request as of 2010, R.R. at 70a–71a, undermines BET's argument that it was unable to ascertain what mineral reserves were subject to the assessments, and, therefore, unable to present valuation evidence.

In addition, at the hearing, BET's counsel explained the last series of numbers in the tax parcel ID numbers for the parcels at issue here corresponded to the numbers of the surface mining permits issued by the Department of Environmental Protection (DEP) for these parcels. R.R. at 18a–19a. That BET owns parcels that were assigned tax parcel ID numbers based on the mining permit number issued by DEP to allow for the mining of the land owned by BET further undermines BET's argument that the absence of more detailed tax maps rendered it unable to discern what land was subject to the tax assessments.

Further, BET's witness, Christine Skibiel, an experienced title searcher in Schuylkill County, testified that the information maintained within the County included: (1) the identity of the owner of the mineral assessment; (2) the assessed value; and, (3) the acreage of the assessment. R.R. at 43a–44a. Skibiel testified the only information missing was a map depicting the tax mineral assessments, R.R. at 44a, which, as explained above, was maintained by RTC in State College on the County's behalf.[8]

---

**7.** At oral argument, BET indicated it purchased the properties at issue here through bankruptcy proceedings involving the properties' former owner, further rendering it unable to discern the value of the properties. However, BET did not develop or fully explain this argument in its brief to this Court. Also, our review of the transcript of the hearing before the trial court as well as BET's proposed findings of fact and conclusions of law reveals no mention of this point.

**8.** Skibiel also testified that all tax assessment maps, including those that were available before the use of computers, contained a disclaimer that they were not for surveying purposes, but rather only for assessment purposes. Reproduced Record (R.R.) at 44a. Indeed, she testified that tax assessment

Also, while BET points to a discrepancy regarding the acreage of the parcels at issue on the property record cards between tax years 2011 and 2012, Falkenstern explained this error had no impact on the valuation of these properties. R.R. at 67a–68a.

In short, the County maintained essentially all of the information required by former Section 306(a) of the Assessment Law (and current Section 8834 of the Consolidated County Assessment Law) either at the County seat in Pottsville or by RTC in State College.

■ Moreover, even if BET was correct that the tax maps and property record cards maintained before April 2011, did not contain all of the information required by former 306(a)(1) and (2) of the Assessment Law, and its successor 53 Pa.C.S. § 8834(1), (2), BET offers no persuasive explanation as to how this Court could afford BET the remedy it seeks, invalidation of the tax assessments.

To that end, former Section 306 of the Assessment Law contained subsection (c), which authorized any municipal corporation or school district within a county to file suit in mandamus to compel compliance with that act and its amendments. *However,* former Section 306 did *not* provide for the remedy BET seeks, invalidation of a tax assessment based on a failure to strictly comply with the terms of the provision. *Id.* Further, the current version of the statute, 53 Pa.C.S. § 8834, does not expressly provide for any remedy based on a county assessment office's noncompliance with the assessment records system requirements. Therefore, neither former Section 306 of the Assessment Law nor 53 Pa.C.S. § 8834, expressly authorizes the remedy BET seeks.

BET points to our Supreme Court's recitation of the general principles that taxing statutes are to be strictly construed, and that whatever the law requires to be done for the protection of the taxpayer is usually mandatory rather than directory. *See Allied Bldg. Credits.* However, BET cites no case [9] that authorizes the remedy it seeks under these circumstances, invalidation of the taxes assessed based upon technical deficiencies in the records kept by the County in connection with its property records assessment system. To that end, *Allied Building Credits* is distinguishable. That case involved the invalidation of a settlement of a taxpayer's corporate net income tax where the settlement was made after the expiration of the time limit set forth by statute for such settlements. That case did not address the statutory requirements for an assessment records

maps were "not for surveying purposes," but rather were "[j]ust [used] to give you a general idea of location and kind of dimensions." R.R. at 45a. Thus, contrary to BET's suggestions, based on the testimony of its own witness, the tax maps could not be relied upon to provide an exact depiction of the tax parcels at issue. As such, Skiebel's testimony on this point undermines BET's argument that the tax maps contained information that was essential for discerning the value of the parcels.

9. The only arguably relevant appellate case discussing former Section 306 of the Assessment Law is *Narehood v. Pearson,* 374 Pa. 299, 96 A.2d 895 (1953). There, the Supreme Court summarily rejected as premature a taxpayer's challenge that an assessment board's failure to maintain a permanent records system rendered the assessments at issue illegal. In that case, the taxpayer brought its challenge several years before the date by which the board was required to establish a permanent records system. The Supreme Court rejected the taxpayer's argument in only two sentences because the permanent records system requirement was not yet applicable. The Court offered no opinion on the appropriate remedy if the taxpayer's challenge was timely.

system or any potential remedy for non-compliance with those requirements.

■ Further, while BET is correct that statutory provisions *imposing* taxes are to be strictly construed, *see* 1 Pa.C.S. § 1928(b)(3), the provisions at issue here, which relate to maintenance of an assessment records system, do not impose taxes. Thus, it is unclear that this rule of statutory construction applies here.

## B. Taxation of Coal

BET next points out that coal is generally assessable as taxable real property under Section 201 of the General County Assessment Law,[10] 72 P.S. § 5020–201. However, it asserts, coal may be separately assessed only where its ownership is severed from the overlying surface. *See* 53 Pa.C.S. §§ 8818(e), 8819[11]; *Mathies Coal Co., Appeal,* 435 Pa. 129, 133, 255 A.2d 906, 908 (1969).

Here, BET argues, it presented a copy of the deed for its properties in both Schuylkill and Carbon Counties at the hearing. R.R. at 92a–124a. That deed reflects that BET owns approximately 3,883 acres of coal land in Schuylkill County. R.R. at 107a. Further, County Exhibits 2 and 4 show 1,047 acres corresponding to tax parcel 40–0–54733020 and 2,233 acres corresponding to tax parcel 65–0–54733020, or 3,280 acres total. *See* R.R. at 137a, 139a. Based on the acreage corre-

sponding to tax parcels 40–0–54733020 and 65–0–54733020, BET contends, it is clear the County included essentially all of BET's coal land in Schuylkill County as within those two tax parcels.

However, BET maintains, the deed also indicates the coal lands are being assessed a second time, using a collection of various other parcel numbers. *See* R.R. at 95a. It is precisely because the subject coal land is being assessed twice that BET argued before the trial court that the County improperly assessed either (a) the value of personalty obtained through mining operations, namely, the value of coal severed from real property, or (b) the value of an income stream generated through ownership of a mining permit.

BET maintains a review of Falkenstern's testimony reveals the impropriety of the assessments at issue. Specifically, BET's Exhibit 4 contained a map sent by Falkenstern to BET's counsel, which reflects no acreage and contains no reference to either Tax Parcel 40–0–54733020 or Tax Parcel 65–0–54733020. *See* R.R. at 73a–74a, 125a–27a. Falkenstern testified the assessment he made on behalf of the County with respect to Tax Parcels 40–0–54733020 and 65–0–54733020 was done without reference to any maps. R.R. at 74a. He further testified the assessments were made based on production and assumed future depletion of "mineral reserves in the ground right now" and that a

---

10. Act of May 22, 1933, P.L. 853, *as amended.*

11. Those Section state (with emphasis added):

§ 8818. **Assessment of lands divided by boundary lines**

\* \* \*

(e) **Assessment of coal underlying lands divided by county, city, township or borough boundary lines.**—Where coal is lying underneath lands that are divided by county, city, township or borough lines, *and the ownership of the coal has been severed from the*

*ownership of the strata or surface, the county assessment office shall assess each division of coal in the municipality in which it actually lies.*

\* \* \*

§ 8819. **Separate assessment of coal and surface**

The county assessment office *shall assess coal and surface separately in cases where the owner or life tenant of land does not have the right to mine the coal underlying the surface.*

53 Pa.C.S. §§ 8818(e), 8819.

reduction he made to the tax assessment with respect to these parcels was based on production. R.R. at 75a–76a. Falkenstern also indicated that when a tax parcel of the sort at issue in this appeal, *i.e.*, a "permit parcel" is dormant and there is no production from the mine associated with the corresponding permit parcel, the assessment is made based on an arbitrary figure assigned by Falkenstern, *i.e.*, $1,000, which represents a "place holder" value. R.R. at 75a–77a.

BET maintains Falkenstern's testimony confirmed the County is taxing the real property that is the subject of these appeals twice, once as real property, and a second time based on the income produced through mining of the real property. In other words, the second tax is being assessed based on production, and represents a tax either on personalty, *i.e.*, the value of severed coal, or the income stream generated through mining conducted pursuant to a permit issued by DEP. Moreover, the methodology utilized by RTC and the County in making the second, prohibited assessment is itself improper.

To that end, BET argues, the County's assessment methodology with regard to active mining under a permit represents an impermissible assessment of "value-in-use." *See F & M Schaeffer Brewing Co. v. Lehigh Cnty. Bd. of Appeals*, 530 Pa. 451, 610 A.2d 1 (1992).

At the outset, we note, a review of BET's proposed findings of fact, conclusions of law and discussion filed with the trial court reveals that BET did not clearly or fully develop the arguments in the manner set forth above. *See* Original Record (O.R.), Item # 23. Aside from its primary arguments regarding the lack of appropriate maps and property record cards as a basis to invalidate the assessments, BET very briefly asserted the assessments were improperly based on either (a) the value of personalty obtained through mining operations, namely, the value of coal severed from real property, or (b) the value of an income stream generated through ownership of a mining permit. *Id.* BET did not develop these arguments further. *Id.* Additionally, BET did not specifically raise its "value-in-use" argument below. However, even if properly preserved, we discern no merit in the arguments raised by BET.

First, BET's argument, that the mineral assessments are not a tax on real property, but instead a tax on the owner's intangible right to mine coal, is not consistent with Pennsylvania law.

■ Pennsylvania law recognizes three discrete estates in land: the surface estate, the mineral estate, and the right to subjacent (surface) support. *Consol. Coal Co. v. White*, 875 A.2d 318 (Pa.Super.2005). Thus, the mineral estate, in this case, the coal reserves, is an estate in land. In *Mathies Coal Co., Appeal*, the Supreme Court explained:

> Coal is real estate and where the coal estate has been severed from the ownership of the surface by agreement or conveyance, the coal is separately assessable and taxable to the owner of the coal estate. The owner of coal in place has been held taxable even though he has no right to mine or remove the coal.

435 Pa. at 133, 255 A.2d at 908 (citation omitted) (emphasis added).

Additionally, we reject BET's argument that the County is taxing the properties here twice, once as real property and a second time based on the income produced through mining. Although BET points to its deed in support of its argument that the County is taxing parcels at issue here twice, BET presented no expert valuation evidence to substantiate its current attacks on the County's methodology, or to explain

how the County otherwise erroneously assessed the taxes at issue here.

To that end, as our Supreme Court explained in *Mathies Coal Co., Appeal*, a case in which "no evidence of value whatsoever was offered by appellants to controvert the complete, total assessment valuations fixed by the [b]oard":

> *The presentation of the assessment records by the [b]oard in this case made out a prima facie case which established the validity of the assessments which must be affirmed in the absence of sufficient proof produced by the coal companies to overcome the correctness of the valuations so fixed by the [b]oard . . . .*
>
> And so in the instant case even if we accept as credible the appellants' testimony that the support coal had no value whatsoever, *it was their further burden, in order to overcome the prima facie correctness of the assessment, to produce independent evidence that the market value of the subject of the assessment as a whole was lower than the total assessment as fixed by the [b]oard. This, they did not even attempt to do. There was, therefore, insufficient evidence before the court below to support a finding that the total assessment was incorrect.* The lower court under the state of the record had no alternative other than to allow the assessment of the [b]oard to stand and dismiss the appeals.

435 Pa. at 132, 136, 138, 255 A.2d at 907, 909, 910 (citations omitted) (emphasis added).

■ Here, after the County made out its *prima facie* case by presenting the assessment records for the parcels, BET offered no independent evidence that the market value of the parcels was lower than the assessment fixed by the Board. In the absence of such evidence, BET's challenge to what it claims is the erroneous method-

ology employed in determining the assessed value of the tax parcels at issue is unavailing. *See Deitch Co.*, 417 Pa. at 221, 209 A.2d at 402 (1965) (*"If the taxpayer fails to respond* [to the presentation of the assessment records] *with credible, relevant evidence,* then the taxing body prevails.") (Emphasis in original).

As to the proper methodology used in determining the market value of coal lands, in *Philadelphia & Reading Coal & Iron Co. v. Commissioners of Northumberland County*, our Supreme Court explained:

> The factors to be considered in determining the market value of coal lands have frequently been stated by this court. Besides the prices paid in sales of similar lands, due regard must be given to the physical features of the property to be valued. There should be taken into account the location, the formation of the coal strata, the number of veins, their depth, thickness, pitch, basins, their proximity to outcrop, and the character of the separating rock formation; the quality of the coal, and whether of a gaseous or nongaseous nature; the kind of overlying surface; the availability of the coal and difficulty in mining it; the probable quantity of the merchantable coal in the ground with allowance for loss in mining; the state of development of the property, the demand for the product, and all the elements which a prudent purchaser would take into consideration[.]

323 Pa. 185, 189, 186 A. 105, 108 (1936) (citations omitted).

Viewed in light of this language, BET attacks as improper Falkenstern's testimony concerning the manner in which RTC assesses coal lands on behalf of the County, *i.e.*, based on coal production records. R.R. at 75a. However, our review of the

record reveals, although Falkenstern briefly testified as to RTC's assessment of coal lands, *see* R.R. at 68a–69a, 74a–75a, 77a–78a, neither Falkenstern nor any County witness presented testimony regarding the complete methodology or the specific calculations used to establish the market value of the mineral reserves at issue here. This is not surprising in light of the fact that BET presented no valuation evidence after the County met its *prima facie* case by presenting its official assessment records and the testimony of its chief assessor.[12]

Moreover, contrary to BET's suggestions, Falkenstern did *not* testify the assessed value of coal lands is based *solely* on coal production, without consideration of other factors. Rather, he testified production figures are "one point that goes into [an assessment]." R.R. at 74a–75a. Indeed, the exhibit BET presented at the hearing, prepared by Falkenstern and transmitted to BET's counsel, reveals RTC considered numerous categories of valuation data in arriving at the assessments at issue. R.R. at 125a–26a.

Perhaps more importantly, it is unclear that Falkenstern, who is a professional geologist, is actually an appraisal expert. *See* R.R. at 65a–67a. BET's attempt to meet its burden by attacking the limited testimony offered by Falkenstern is unavailing.

Further, as to BET's waived "value-in use" argument, in *F & M Schaeffer Brewing Co.*, our Supreme Court (with the majority of the Justices concurring in the result only) held "a property's use and its resulting value-in-use cannot be considered in assessing fair market value of property for tax assessment purposes in Pennsylvania." *Id.* at 457, 610 A.2d at 4. In that case, the Court reversed a common pleas court's decision that relied on expert valuation testimony that was based on the "highest and best use [of the commercial property at issue as a] 'special purpose' brewery." *Id.* at 456, 610 A.2d at 3.

Here, unlike in *F & M Schaeffer Brewing Co.*, the trial court did not rely on expert valuation testimony concerning the "value-in-use" of the parcels at issue. Thus, there is no basis upon which to conclude the trial court violated our Supreme Court's directive in *F & M Schaeffer Brewing Co.*

### C. Trial Court's Decisions V

■ BET next argues the trial court erred in failing to make findings of fact or conclusions of law in connection with its orders denying BET's tax assessment appeals, and its failure to do so hinders appellate review. *See, e.g., In re Harrisburg Park Apartments, Inc.*, 88 Pa. Cmwlth. 410, 489 A.2d 996 (1985) (citing *Deitch Co.*) At a minimum, BET asserts, this Court should remand so the trial court can supply detailed findings in order to facilitate an adequate review of the record.

Contrary to BET's contentions, based on the issues presented, the absence of find-

---

12. Further, in the absence of independent valuation evidence, it is difficult to fully analyze BET's argument that the County improperly taxed its mineral reserves separately where the surface and mineral estates were not severed. Additionally, BET did not clearly identify this issue at the hearing before the trial court or in its statement of matters complained of on appeal, resulting in waiver. *See* Pa. R.A.P.1925(b)(4)(vii); *see also* R.R. at 76a

(BET's counsel stated, "Our appeal is based on two prongs. The mapping is one. *The other issue is that they're assessing something other than real property, namely mining permits.*")(Emphasis added).

Even if not waived, however, a review of the deed BET presented regarding the tax parcels at issue reveals there was a partial severance of mineral rights. R.R. at 100a–102a, 107a, 115a–118a.

ings of fact and conclusions of law does not necessitate a remand.

To that end, this is not a case like *Harrisburg Park Apartments* in which we remanded to a common pleas court so it could resolve a conflict in expert testimony as to the value of a property and make required findings as to fair market value, the appropriate ratio of assessed value and the resulting assessment. *See also Deitch Co.* (where taxpayer presented independent expert valuation evidence in response to taxing authority's presentation of its assessment records, trial court was required to make factual findings in determining proper assessment).

Here, BET did not present any independent expert valuation evidence regarding the value of the tax parcels at issue after the County made its *prima facie* case. As a result, the trial court determined BET did not sustain its burden of overcoming the County's *prima facie* case as to the assessed values of the parcels, and, therefore, the values for the subject parcels must stand as currently assessed. *See, e.g., Mathies Coal Co. Appeal.* The trial court was not called upon to resolve a conflict in expert appraisal testimony in order to render its decision, and, as stated above, a taxing authority may prevail before a trial court on appeal from an assessment by simply presenting its assessment records. *Quad Assocs.*

Before the trial court, BET asserted the assessments were void *ab initio* because the County did not comply with statutory requirements regarding the maintenance of tax maps and property record cards. It also very briefly argued the mineral reserves were personalty or an income stream, and therefore, not properly subject to real estate tax assessment. For the reasons discussed throughout this opinion, we can resolve these legal issues on the existing record without the need for a remand.

## D. Refund of Taxes to Rausch Creek Land, L.P.

■ BET also contends the record reveals the County refunded taxes to RCL, an entity that sought a refund based on the absence of tax mapping records, for a tax parcel similar to those at issue in these appeals, namely tax parcel 29-0-54861303. In so doing, BET argues, the County admitted its assessment was invalid because it did not maintain the required mapping as contemplated by the statutory provisions discussed above. BET argues this admission likewise means that, because mapping records were not maintained with regard to the tax parcels at issue here, the related tax assessments are invalid.

Despite the fact that BET mentioned this issue at the hearing before the trial court, the trial court did not specifically address it. Nevertheless, this issue lacks merit.

Specifically, at the hearing below, BET presented an exhibit comprised of eight pages regarding a property tax refund requested and received by RCL. R.R. at 128a–135a. This exhibit includes a petition filed by RCL claiming a refund for property taxes with regard to a tax assessment for a parcel identified as 29-0-54861303. R.R. at 128a–29a.

In its petition, RCL advanced two reasons why the taxes should be refunded: (1) it was not the owner of the property at issue; and, (2) the County Assessment Office did not possess and make available for public inspection and review a map that corresponded to the parcel at issue. *Id.*

Also, as part of this exhibit, BET included a cover letter from the Office of the County Solicitor regarding the refund. R.R. at 134a. According to the caption of the letter, the refund was for parcels 13–

09–003.000 and 29–0–54861303. *Id.* Significantly, the letter, the body of which is only one sentence, provides no reason for the issuance of the refund. *Id.*

Further, at the hearing below, in response to BET's counsel's claims that the trial court should treat the refund issued to RCL as an admission, the County Solicitor stated (with emphasis added):

> Your Honor, if I may.· The County would object to any characterization of this as an admission because frankly, *to the extent the refund was issued, it was issued in error and it was an administrative error because there were two claims of refunds of taxes as submitted by [RCL's Counsel] at the same time on behalf of this client. One was for a parcel of 13–9–3 that he represented. Was actually owned by the Pennsylvania Game Commission and which I consulted with the Chief Assessor and, yes, so we determined that it was missassessed RCL. So a refund was issued. This also came in at the same time and either there was a miscommunication or a misunderstanding that this parcel was also owned by the State, by the Department of Environmental Protection. So that's why the refund was issued in that case.*

R.R. at 54a–55a.

In short, the record does not clearly or conclusively establish *why* the County provided RCL the refund it requested or for which parcel or parcels the refund applied. In the absence of more definitive record evidence, we reject BET's argument that the refund issued to RCL constitutes an admission that the tax assessed against RCL was invalid based on the County's alleged failure to maintain the required tax mapping information.

### E. BET's Request to Supplement its Proposed Findings of Fact and Conclusions of Law

As a final point, BET maintains the trial court erred in denying its request to supplement its proposed findings of fact, conclusions of law and discussion, without providing any basis for the denial.

BET contends that, through its request to supplement, it sought to explain that Portnoff Law Associates, on behalf of PVSD, filed a tax claim against BET Associates IV, the owner of the mining permit, and not BET, the owner of the real property purportedly being assessed.

By filing a tax claim against a permittee, BET argues, Portnoff admitted and confirmed what BET argued before the trial court, that, in light of the complete absence of tax maps and property records as required by statute, the assessments could not be considered to have been made against real property. Instead, the assessments represent: (a) unauthorized assessments against the income stream to be generated by the right to mine coal under a surface mining permit issued by DEP, or alternatively, (b) a severance tax on the value of mined coal and therefore a tax on personalty. Simply stated, BET asserts, Portnoff could not file a tax claim against the real property owner because there were no tax maps by which Portnoff could identify the owner. BET contends this admits its arguments regarding the invalidity of the assessments here based on the lack of required mapping information and the fact that the subject taxes same were not, in fact, assessed against real property.

Upon review, we discern no error in the trial court's denial of BET's request to supplement its proposed findings of fact and conclusions of law.

Specifically, BET filed a praecipe to supplement its proposed findings of fact and

conclusions of law by disclosing the filing of a tax claim by PVSD on April 18, 2012, which named BET Associates, IV, LLC (rather than BET), as the owner of mineral reserve assessment 40–0–54733020. *See* R.R. at 136a, 150a–52a. BET asserted PVSD named the wrong defendant in that BET Associates, IV, LLC, is the permittee under DEP surfacing mining permit No. 54733020 and is not the owner of the assessment.

BET asserts this information shows the assessments here represent: (a) unauthorized and illegal assessments against the income stream to be generated by the right to mine coal under a DEP surface mining permit, or (b) a severance tax on the value of mined coal and therefore a tax on personalty.

Contrary to BET's assertions, the fact that Portnoff filed its tax claim against a permittee rather than the property owner could just as likely show that Portnoff named the incorrect entity as property owner. In its praecipe to supplement, BET did not request a hearing to develop a record on this factual issue. *See* O.R., Item # 25. In the absence of further factual development, BET cannot prevail on this issue.

In addition, BET argues: "Portnoff could not file a tax claim against the real property owner because there were no County tax maps by which Portnoff could identify the owner." Appellant's Br. at 37. However, at an earlier point in its brief, BET acknowledges that the County complied with the mapping requirements as of April 2011. *Id.* at 33. What BET's argument omits is that Portnoff filed the tax claim in April *2012*, R.R. at 150a–51a, a full year *after* BET acknowledges the County complied with the mapping requirements. This further undermines BET's argument on this point.

For all the foregoing reasons, we affirm.

## ORDER

AND NOW, this 10th day of April, 2013, the orders of the Court of Common Pleas of Schuylkill County at Docket Numbers S–3131–2010 and S–3132–2010, dated July 9, 2012, are **AFFIRMED.**