## Maula v. Northampton County Division of Assessment

C.P. of Northampton County, No. C-48-CV-2014-11108

*Robert J. Kidwell*, for appellant.
*David M. Backenstoe*, for respondent.

BELTRAMI, *J.*, July 2, 2015—This matter is before the Court on the appeal of Anthony Maula ("Appellant") from the October 22, 2014, Decision of the Northampton County Revenue Appeals Board denying his appeal from Respondent's termination of the preferential tax assessment for Appellant's property and the imposition of roll-back taxes. Appellant commenced this appeal by filing a Petition for Appeal on November 21, 2014. The County of Northampton ("Intervenor") filed a Notice of Intervention and an Answer to the Petition on March 4, 2015. On March 20, 2015, the parties filed a Joint Stipulation of Facts. On April 28, 2015, the case was assigned to the undersigned, on briefs, at Argument Court. The matter is ready for disposition.

As the factual basis of this appeal, the Court will reproduce herein the Joint Stipulation of Facts filed by the parties:

1. Appellant is the former owner of a "contiguous tract" of land, as that term is defined by Section 5490.2 of the Pennsylvania Farmland and Forest Land Assessment Act of December 19, 1074, P.L. 973, No. 319, 72 P.S. § 5490.1, et seq., ("Act 319"), located on Jacoby Run Road in Upper Mt. Bethel Township.

2. The parcels of the contiguous tract have separate ID numbers as follows:

(a) Parcel ID # C11 9 11A 0131 (26.7 acres) ("Parcel A");

(b) Parcel ID # C11 9 11B 0131 (55.2 acres) ("Parcel B"); and

(c) Parcel ID # C11 9 11C 0131 (2.88 acres) ("Parcel C"). . . .

3. On April 22, 2009, Appellant enrolled the entire contiguous tract (Parcels A, B[,] and C) for preferential assessment under Act 319. . . .

4. Parcel C consists of 2.88 acres and is used as a detention basin.

5. Appellant failed to pay real estate taxes on Parcel C for the years 2011, 2012[,] and 2013.

6. On or about July 22, 2013[,] and multiple times thereafter, Appellant was notified by the Tax Claim Bureau that if he failed to pay taxes due and owing on Parcel C in the total amount of $266.12, Parcel C would be sold at the September 24, 2013[,] tax-upset sale. . . .

7. Appellant failed to pay back taxes in the amount of $266.12[,] and[,] therefore[,] Parcel C was sold at the subsequent tax sale.

8. On March 21, 2014, pursuant to the tax sale, [Intervenor] conveyed title to Parcel C to Romany Investments, LLC. . . .

9. On June 13, 2014, Appellant sold Parcel A to Patricia Setar. . . .

10. Appellant retained title to Parcel B only. Parcel B is a 55.2 acre parcel classified by [Intervenor] as agricultural, rural land, vacant over 10 acres.

11. On or about July 11, 2014, [Respondent] learned that Parcel C had been conveyed to a third party; pursuant thereto [Respondent] provided Appellant notice of [roll-back] taxes due and owing for Parcels A, B[,] and C. . . .

12. On August 5, 2014, [Respondent] notified Appellant of a change of assessment for Parcels A, B[,] and C. The prior assessment for Parcel B was $3,200.00[,] and the new assessment was $111,100.00. . . .

13. The basis for the change in assessment on the August 5, 2014[,] notification was the statement "Take Out of Act [319]." [Respondent] provided no additional explanation for the termination of the preferential assessment for Parcel B.

14. Appellant filed a timely appeal of the change of assessment to the Northampton County Revenue Board of Appeals (the "Board").

15. The Board convened a hearing on the appeal on October 21, 2014.

16. The Board determined by way of a written decision dated October 22, 2014[,] that it would not change the assessment. . . .

17. On November 21, 2014, Appellant filed a timely appeal to this Court from the determination of the [Board].

(Joint Stip. of Facts ¶¶ 1-17, Exs. A-H.) In addition to the termination of the preferential tax assessment, Intervenor seeks roll-back taxes and interest from Appellant in the amount of $56,353.54 for the tax years 2010 through 2014. (*Id.* Ex. F.)

Typically,

> [i]n a *de novo* proceeding in a tax assessment case, the taxing authority bears the initial burden of establishing its *prima facie* case for the validity of the assessment. This is typically done by presenting the official assessment records and the testimony of an assessment officer. The burden then shifts to the taxpayer to respond with credible, relevant evidence to persuade the court of the merits of his position. If the taxpayer fails to do so, the taxing authority prevails. However, if the taxpayer meets its burden, then the court may no longer presume the taxing authority's assessments are correct.

*BET Lehigh Real Estate, LLC v. Schuylkill Cnty. Bd. of Assessment Appeals*, 67 A.3d 845, 852 (Pa. Cmwlth. 2013). In this appeal, however, the parties have chosen to submit the above-reproduced Joint Stipulation of Facts "in lieu of a non-jury trial" and to rest on their briefs for purposes of argument. (Order of Court, Mar. 25, 2015.) Therefore, it is apparent that the nature of this challenge is limited solely to Respondent's decision to remove Appellant's parcel from Act 319's preferential treatment and to impose roll-back taxes, rather than the methodology or calculation process it used in imposing an assessment. For these reasons, the Court does not believe this matter is an "appeal of an assessment," such that it is required to determine "the market value" of the subject property or "the common level ratio" applicable thereto. 72 P.S. § 5020-518.2(a)(1)-(2).

Intervenor's primary argument in favor of affirming the Board's Decision is that the tax-upset sale of Parcel C on September 24, 2013, constituted an impermissible "split-off," as defined in Act 319, authorizing Respondent

to impose roll-back taxes and to remove the preferential tax assessment.[1] Appellant argues that he did not conduct a split-off by a conveyance or any other action and that he is, therefore, not subject to roll-back taxes or a change in assessment.

> The split-off of a part of land which is subject to preferential assessment under [Act 319] shall subject the land so split off and the entire tract from which the land was split off to roll-back taxes . . . . The landowner who conducts the split-off shall be liable for payment of roll-back taxes.

72 P.S. § 5490.6(a.1)(1). Pursuant to Act 319, a "split-off" is defined as

> [a] division, by conveyance or other action of the owner, of lands devoted to agricultural use, agricultural reserve or forest reserve and preferentially assessed under the provisions of this act into two or more tracts of land, the use of which on one or more of such tracts does not meet the requirements of section 3 [(concerning land devoted to agricultural use, agricultural reserve, and/or forest reserve)].

*Id.* § 5490.2. This appeal hinges on the phrase "conveyance or other action of the owner." If the tax sale of Parcel C, which occurred due to Appellant's non-payment of real estate taxes, was a "conveyance or other action of the owner," a split-off occurred, and the imposition of roll-back taxes and the change in assessment are justified. The Court notes that "[a] statute creating a preferential tax

---

1. Intervenor argues that Respondent was authorized to change the preferential assessment for Parcels A, B, and C as the result of the tax sale of Parcel C because Parcel C is less than ten acres. *See* 72 P.S. § 5490.3(a)(1).

treatment must be strictly construed against the taxpayer." *Sher v. Berks Cnty. Bd. of Assessment Appeals*, 940 A.2d 629, 632 n.4 (Pa. Cmwlth. 2008); *see also* 1 Pa.C.S.A. § 1928(b)(3), (5) (providing provisions of statutes imposing taxes and providing exemption from taxation shall be strictly construed).

Preliminarily, the Court agrees with Appellant that Intervenor can only maintain that there was a split-off by "other action of the owner," since Intervenor cannot plausibly argue that there was a split-off of Parcel C by a "conveyance" of Appellant.[2] Hence, the dispositive question in this appeal is whether Appellant's failure to pay real estate taxes on Parcel C, which led to the resulting tax-upset sale of that parcel, constituted "action of the owner." Based on the record in this case, the Court can only conclude that, pursuant to the plain and unambiguous language of Section 5490.2 of Act 319, Appellant did not take any "action" constituting a split-off.

The facts on which Intervenor bases its argument that a split-off occurred include that "Appellant failed to pay real estate taxes," that "Appellant failed to pay back taxes," and that "[Intervenor] conveyed title to Parcel C" following the tax sale. (Joint Stip. of Facts ¶¶ 5, 7-8.) None of these examples involve Appellant taking any "action" whatsoever. Further, Intervenor's argument that Appellant's failure to pay real estate taxes constituted "action" is contradicted by the following language in Section 5490.6: "The landowner who *conducts* the split-off shall be liable for payment of roll-back taxes." 72 P.S. § 5490.6(a.1)(1) (emphasis added). The verb "conduct" is defined as "to plan

---

2. A "conveyance" is "[t]he *voluntary* transfer of a right or of property." BLACK'S LAW DICTIONARY (10th ed. 2014) (emphasis added).

and do (something, such as an activity)."[3] MERRIAM-WEBSTER DICTIONARY (2015). Thus, the statute's use of the term "conducts" implies that a split-off can only occur if a landowner contemplatively takes some affirmative step to see that a division of property occurs. In other words, the statute plainly implies active involvement by the landowner in the decision to voluntarily conduct a split-off. To the contrary, a landowner who passively allows a parcel subject to Act 319 to be divided from a contiguous tract, or who knowingly or unknowingly allows it to be sold at a judicial sale, cannot be said to have "conducted" or taken "action" consistent with a split-off. Because the tax-upset sale and subsequent conveyance of Parcel C upon which Respondent rested its decision to terminate the contiguous tract's preferential assessment and to impose roll-back taxes does not meet the definition of a "split-off" as contained in Act 319, Appellant is not liable for roll-back taxes, and the Board erred in failing to reverse Respondent's decision to remove Appellant's parcel from Act 319's preferential treatment and to impose roll-back taxes.

WHEREFORE, the Court enters the following:

## ORDER OF COURT

AND NOW, this 2nd day of July, 2015, the Decision of the Northampton County Revenue Appeals Board, entered on October 22, 2014, is hereby REVERSED. Respondent shall correct its assessment records in accordance with the Court's opinion.

---

3. Where the legislature does not define a term, "its common and approved usage may be ascertained by examining its dictionary definition." *Commonwealth v. Hart*, 28 A.3d 898, 909 (Pa. 2011).